BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
JACQUELINE COLEMAN SNEAD
Assistant Branch Director
JULIA BERMAN, Bar No. 241415
Trial Attorney
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 616-8480; Fax: (202) 616-8470
*Attorneys for the Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES POSTAL SERVICE,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>CITY OF BERKELEY,<br><br>　　　　　　Defendant. | Case No. _____<br><br><br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff, the United States Postal Service, by and through its undersigned attorneys, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action to declare invalid and to permanently enjoin application and enforcement of Berkeley Municipal Code Chapter 23E.98, Civic Center District Overlay, attached hereto as Exhibit 1 ("the Zoning Ordinance"), insofar as it regulates the Berkeley Main Post Office parcel, located at 2000 Allston Way, Berkeley, California ("Berkeley Main Post Office" or "the Property"). Enacted primarily to prevent the sale of the Berkeley Main Post Office, the Zoning Ordinance limits the Property to civic or nonprofit uses. By prohibiting any commercially viable uses, the Zoning Ordinance has interfered with the Postal Service's disposition of the Property. The Zoning Ordinance therefore prevents the Postal Service from

1 fulfilling its responsibilities under federal law, and is invalid under the Supremacy Clause of the
2 United States Constitution, Article VI, Clause 2.  Furthermore, the Zoning Ordinance is
3 preempted because it conflicts with federal law, and impedes the accomplishment and execution
4 of the full purposes and objectives of federal law.

5     2.    Plaintiff seeks a declaratory judgment that the Zoning Ordinance, insofar as it
6 regulates the Property, is invalid under the Supremacy Clause and is preempted by federal law.
7 Plaintiff also seeks injunctive relief to permanently enjoin application and enforcement of the
8 Zoning Ordinance with respect to the Property.

## JURISDICTION AND VENUE

10     3.    This action arises under the Constitution of the United States, Article VI, Clause
11 2 (Supremacy Clause), and Article I, Section 8, Clause 7 (Postal Clause).  It also arises under the
12 Postal Reorganization Act of 1970, 39 U.S.C. §§ 101–5605, specifically §§ 401(5), 403(b)(3),
13 and 404(a)(3).

14     4.    The Court has jurisdiction under 28 U.S.C. §§ 1331, 1345, 2201, and 2202.  The
15 Court also has jurisdiction under 39 U.S.C. § 409(a).

16     5.    Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b)
17 because the Defendant, the City of Berkeley, is located in that district; a substantial part of the
18 events giving rise to the claim occurred there; and the Property, which is the subject of the
19 action, is situated there.

## PARTIES

21     6.    The Plaintiff, the United States Postal Service, is an independent establishment of
22 the Executive Branch of the Government of the United States.  *See* 39 U.S.C. § 201.

23     7.    The Defendant, the City of Berkeley, is a municipal corporation established under
24 the laws of the State of California.

## CONSTITUTIONAL AND STATUTORY PROVISIONS

26     8.    The Supremacy Clause of the Constitution mandates that "the Laws of the United
27 States . . . made in Pursuance" of the Constitution "shall be the supreme Law of the Land; . . .
28 any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S.

Const., art. VI, cl. 2.

9. The Postal Clause of the Constitution provides that Congress may "establish Post Offices and post Roads." U.S. Const. art. I, § 8, cl. 7. Congress delegated that authority to the Postal Service through legislation including the Postal Reorganization Act of 1970, 39 U.S.C. §§ 101–5605.

10. The Postal Reorganization Act provides that: "It shall be the responsibility of the Postal Service . . . to establish and maintain postal facilities of such character and in such locations, that postal patrons throughout the Nation will, consistent with reasonable economies of postal operations, have ready access to essential postal services." 39 U.S.C. § 403(b)(3).

11. The Postal Reorganization Act empowers the Postal Service "to determine the need for post offices, postal and training facilities and equipment, and to provide such offices, facilities and equipment as it determines are needed," 39 U.S.C. § 404(a)(3), and "to hold, maintain, sell, lease, or otherwise dispose of such property or any interest therein," *id.* at § 401(5).

## FACTUAL BACKGROUND

### Postal Service Determination that Financial Circumstances Necessitate a Sale

12. The Postal Service tries to use cost effective measures to ensure that it can continue to provide effective and affordable postal services to the public. As part of that effort, pursuant to its authority under the Postal Reorganization Act, the Postal Service is right-sizing its operations and selling real estate assets that are in excess of contemporary postal operational needs.

13. The Postal Service owns real property located at 2000 Allston Way, in Berkeley, California (the "Property" or "Berkeley Main Post Office"). The Postal Service has occupied the Property since the 1930s and uses it for retail post office and delivery operations.

14. In 2012, the Postal Service determined that the Berkeley Main Post Office was underutilized because the Postal Service's operations require only 4,000 square feet of the approximately 57,000 square-foot building. The Postal Service determined that it could reduce

Complaint for Declaratory and Injunctive Relief                                                                3

costs by selling the Property and moving its retail operations to a smaller location.

15. Thereafter and throughout the beginning of 2013, the Postal Service engaged the Berkeley community to obtain public comment regarding the Postal Service's relocation of retail services in connection with the proposed sale, including through a written public comment period and a community meeting at Berkeley City Council Chambers in February 2013.

16. Following extensive community engagement, in October 2013, the Postal Service's broker began marketing the Property. Reflecting regulatory requirements and the Postal Service's efforts to honor the community's concerns, the marketing materials for the Property discussed restrictions to preserve the Berkeley Main Post Office's historic features, and the Postal Service's interest in leasing back 3,500 square feet of the Property for its retail operations.

**Steps by the City of Berkeley to Prevent the Sale of the Property**

17. On March 5, 2013, the Berkeley City Council adopted Resolution 66,025-N.S., announcing that "the City of Berkeley formally opposes the sale of the Historic Berkeley Main Post Office building." Resolution 66,025-N.S. at 1. The City Council also resolved "that the USPS suspend, for one year, efforts to sell the Berkeley Main Post Office building and work with the City of Berkeley with the goal of continuing the USPS's ownership of the building" and "request[ed] that USPS immediately impose a moratorium on all sales of Post Office Buildings nationwide." *Id.* The resolution further provided that "the City of Berkeley [would] reach out to other cities affected by the sale of postal facilities to develop a collective response." *Id.*

18. On April 30, 2013, the Berkeley City Council sent a letter to the Postal Service appealing the decision to relocate retail services stating, additionally, that "the Berkeley City Council continues to be united and passionate in its opposition to the sale of this property." The Postal Service considered this appeal as well as others, but ultimately upheld the determination that retail services should be relocated from the Berkeley Main Post Office. The Postal Service announced that decision in its Final Determination Regarding Relocation of Retail Services in Berkeley, California on July 18, 2013 ("Final Determination letter"). That letter explained that the Postal Service would make an effort to accommodate the community's concerns, including

1  by potentially pursuing a sale that would include a lease-back provision to allow retail services to
2  continue at the Berkeley Main Post Office. The Postal Service emphasized that "dire
3  circumstances force[d] [it] to pursue every opportunity to reduce costs and generate revenue,"
4  and that "[t]he Postal Service must, in order to be self-sustaining, make decisions that ensure it
5  provides adequate and affordable postal services in a manner that is as efficient and economical
6  as possible."

### City of Berkeley Appeals Postal Service's Decision to Sell the Property

19. Following the Postal Service's Final Determination Regarding Relocation of Retail Services in Berkeley, California, City Mayor Tom Bates appealed the Postal Service's decision to sell the Property and relocate services to the Postal Regulatory Commission ("PRC"), the Postal Service's independent regulator. The Mayor argued that the Postal Service failed to observe required procedure in deciding to close the Berkeley Main Post Office and that the decision was not supported by substantial evidence.

20. The PRC dismissed the appeal, finding that the Postal Service's actions concerning the Berkeley Main Post Office were "insufficient to trigger an appeal at [that] time." The PRC held that the appeal would not be ripe until it was known "when the Berkeley [Main Post Office] [would] close, and where and when the replacement facility [would] begin operations as a post office."

### The City and the Postal Service Could Not Agree on the Terms of the Historic Preservation Covenant

21. From December 2013 to November 2014, in preparation for the sale of the historic Berkeley Main Post Office building, the Postal Service conferred with the Advisory Council on Historic Preservation, as well as the City, the State Historic Preservation Officer, and other consulting parties (including the California Preservation Foundation, the National Trust for Historic Preservation, the Berkeley Architectural Heritage Association, and the Alameda County Parks, Recreation and Historical Commission), pursuant to Section 106 of the National Historic Preservation Act ("NHPA") about the terms of the historic preservation covenant that would run

with the deed post-sale.[1]

22.     The Postal Service proposed that the historic preservation covenant require the purchaser of the Property to restore, maintain, and preserve historic features of the Property in accordance with the recommendations of the Secretary of the Interior's Standards for Rehabilitation and Guidelines for Rehabilitating Historic Buildings.  The covenant also would prohibit the purchaser from undertaking any construction, alteration, or rehabilitation that would affect the historic features of the Property without consultation and express agreement by the party responsible for enforcing the covenant, or the "covenant holder."

23.     The Postal Service proposed that the City act as the covenant holder, because, in that role, the City would be well positioned to protect the historic character of the Property.  The City, however, demanded a payment of $75,000 to serve in that role, and, additionally, insisted that the Postal Service agree to pay all costs associated with holding and enforcing the covenant.

24.     Although most covenant holders, including the City of Los Angeles, for example, typically do not charge any fee to serve in that role, the Postal Service offered a payment of $25,000 to the City.  The City continued to request $75,000.

25.     To accommodate the City's request that retail operations continue on the Property, the Postal Service proposed the inclusion of a five-year leaseback provision, followed by three five-year options to extend the lease.  The City, however, argued that this potential 20-year term was insufficient, and insisted that the preservation covenant mandate use of the property as a retail post office for a longer fixed term.

26.     In light of the dire financial circumstances necessitating the sale, and to allow it the needed flexibility to manage its resources, the Postal Service determined that such provisions

---

[1] Section 106 imposes procedural requirements to ensure "Federal agencies . . . take into account the effects of their undertakings on historic properties." 36 C.F.R. § 800.1.  As part of the Section 106 process, an agency must identify parties entitled to be "consulting parties" and invite them to participate. *Id.* § 800.3(f).  Such parties include the state historic preservation officer, local governments, and "individuals and organizations with a demonstrated interest in the undertaking . . . due to the nature of their legal or economic relation to the undertaking or affected properties, or their concern with the undertaking's effects on historic properties." *Id.* § 800.2(c)(1), (c)(3), (c)(5).

Complaint for Declaratory and Injunctive Relief                                                                                  6

were unworkable, and the consultation process ended without agreement. The Postal Service concluded that such provisions were untenable not just with respect to the Berkeley Main Post Office, but also when viewed in light of the large network of properties that the Postal Service must manage as part of its operations.

### **Berkeley City Council Passes Berkeley Municipal Code Chapter 23E.98 to Prevent Sale of the Property, and Also Files Suit to Enjoin the Sale**

27. In 2013, the members of the Berkeley City Council began discussing a zoning overlay that would restrict the Property to civic and nonprofit uses as a means of preventing the sale of the Property.

28. By letter dated July 8, 2013, attached hereto as Exhibit 2, City Councilmember Jesse Arreguín advised the Postal Service that the City Council was considering changes to the zoning in the area where the Property is located that "would ensure that the Berkeley Main Post Office building could only be used for a civic or community-oriented use." Councilmember Arreguín concluded his letter:

> Given that USPS is in the process of considering the potential sale of the Berkeley Main Post Office Building, I wanted to bring this to your attention, since the proposal would change the allowable zoning for the property, and would affect what a buyer could do with the property if the building was sold. I also want to take this opportunity to reiterate the Berkeley City Council's strong opposition to the sale of the Berkeley Main Post Office and our interest in working with [the Postal Service] to find solutions to address [the Postal Service's] financial challenges while keeping the building as a post office.

29. The Berkeley Planning Commission's discussion of the proposed zoning change likewise reflected that the Commission seeks to regulate—and prevent—the Postal Service's sale of the Property; at a November 6, 2013 regular meeting of the Berkeley Planning Commission, Commissioner Harry Pollack "expressed his opinion that the overlay was not an appropriate tool for the preservation of the Post Office and urged the Council to buy the Post Office building."

30. At a January 28, 2014 public meeting of the City Council, councilmembers' discussion of the proposed Zoning Ordinance further demonstrated that the purpose of the Ordinance was to regulate the Postal Service's intended sale of the Property. For example, in

Complaint for Declaratory and Injunctive Relief                                                                                      7

support of the Ordinance at that meeting, Councilmember Susan Wengraf stated, "I think you all know that I am very much in favor of saving the Post Office." Councilmember Max Anderson similarly commented on the effort to "defend . . . that building and the purposes for which it was originally designed," arguing that for the City Council "to not go ahead and pursue this overlay . . . would be disarming ourselves in the middle of a battle."

31. Berkeley Mayor Bates expressed a similar view of the zoning overlay to a local online newspaper when he said: "There is general agreement on the council that we would like to save the Post Office, and this is a good way to do it . . . The civic center overlay portion of the initiative . . . can be easily described as 'help save the post office.'"

32. On September 9, 2014, the Berkeley City Council passed Berkeley Municipal Code Chapter 23E.98, Civic Center District Overlay ("the Zoning Ordinance"), restricting nine parcels in downtown Berkeley, including the Property, to civic or nonprofit uses. The Zoning Ordinance eliminated virtually all commercially viable uses of the Property. Prior to the passage of the Zoning Ordinance, allowable uses of those properties were the same as those in the surrounding downtown Berkeley area; previous zoning permitted high density residential, retail, and other commercial use complementary to the area's proximity to the Bay Area Rapid Transit. Under the Zoning Ordinance, however, the Property's only allowable uses include: libraries, judicial courts, museums, parks and playgrounds, public safety and emergency services, government agencies and institutions, public schools/educational facilities; non-profit cultural, arts, environmental, community service and historic organizations, live performance theatre, and a public market.

33. The shape of the Zoning Ordinance confirms that it was designed to regulate the Berkeley Main Post Office rather than to preserve the character of a neighborhood in the City. Within a given block, certain buildings are included, while others are not. Of the nine parcels regulated by the Ordinance, the City of Berkeley (or other local government bodies such as the Berkeley Unified School District) owns seven, and the YMCA and the Postal Service own the remaining two. Additionally, the City permitted its lessees in City-owned parcels within the Civic Center District Overlay to conduct commercial activity inconsistent with the Zoning

1  Ordinance.

2      34. On information and belief, the practical effects of the Zoning Ordinance have
3  fallen only on the Berkeley Main Post Office property, while commercial activity has continued
4  in and around other parcels subject to the Zoning Ordinance.

5      35. On September 22, 2014, the Postal Service entered into an agreement for sale of
6  the Property with developer Hudson McDonald LLC, which submitted the bid on the Property
7  that was in the best interests of the USPS. Under that agreement, the sale was to close by
8  December 22, 2014. That developer, however—like other potential commercial purchasers with
9  which the Postal Service communicated regarding the Property—expressed concerns regarding
10 the City's opposition to the sale, and, in particular, the potential zoning overlay.

11     36. On September 30, 2014, the Zoning Ordinance went into effect.

12     37. The developer attempted to negotiate relief from the Zoning Ordinance with City
13 officials, but was unable to do so within the timeframe provided by the sale agreement.

14     38. On November 5, 2014, the City also filed a lawsuit against the Postal Service in
15 the Northern District of California, seeking to prevent the then-pending sale of the Property. *See*
16 Compl. for Declaratory & Injunctive Relief, *City of Berkeley v. USPS*, Civ. No. 3:14-cv-04916,
17 ECF No. 1 (Nov. 5, 2014).

18     39. On December 3, 2014, the developer terminated the sales agreement with the
19 Postal Service.[2]

20     40. The Zoning Ordinance has rendered the Property unattractive to commercial

---

[2] The City then filed an Amended Complaint seeking declaratory and injunctive relief "to prevent and enjoin [the Postal Service] from implementing [its] decision . . . to relocate and sell the Berkeley Main Post Office . . . until and unless USPS complies with its obligations under the National Environmental Protection Act (NEPA) and National Historic Preservation Act (NHPA), and the proposed relocation and sale is authorized under those statutes." First Am. Compl. for Declaratory & Injunctive Relief, Civ. No. 3:14-cv-04916 ¶ 1 (Dec. 30, 2014). After the Postal Service notified the Court that the Postal Service had rescinded its July 18, 2013 Final Determination to relocate retail services from the Property (by deciding, in September 2014, to retain retail services at that location), the Court dismissed the action as moot, but required that the Postal Service provide the City forty-two days advance notice of the closing of any future sale of the Property or any final determination to relocate retail post office services. *See* Order Dismissing Case as Moot, Civ. No. 3:14-cv-04916, ECF No. 56 (Apr. 14, 2015).

Complaint for Declaratory and Injunctive Relief           9

developers, and has depressed the market price the Property otherwise could yield.  That, in turn, has dissuaded the Postal Service from relisting the Property for sale, and impeded its efforts to carry out its responsibilities under the Postal Reorganization Act to "maintain postal facilities . . . consistent with reasonable economies of postal operations," "to provide such offices, facilities and equipment as it determines are needed," and "to hold, maintain, sell, lease, or otherwise dispose of such property or any interest therein."  39 U.S.C. §§ 403(b)(3), 404(a)(3), 401(5).

41.     On June 20, 2015, the City of Berkeley reaffirmed its intention to dictate the activities of the Postal Service with respect to the Property in Resolution No. 67,128-N.S., entitled "To Preserve and Best Utilize the Downtown Berkeley Main Post Office Building," attached hereto Exhibit 3.  The Resolution reaffirms the Council's March 7, 2013 resolution "in opposition to the sale of the downtown Berkeley Post Office" and expresses plans to discuss "the future of the downtown Berkeley Post Office with the appropriate United States Postal Service officials," including, *inter alia*, what services should be offered at that location, and "[p]otential best uses of space inside the building that is not needed for Postal Services."

## FIRST CAUSE OF ACTION

## VIOLATION OF THE SUPREMACY CLAUSE

42.     Plaintiff hereby incorporates paragraphs 1 through 41 of the Complaint as if fully stated herein.

43.     Berkeley Municipal Code Chapter 23E.98, Civic Center District Overlay was enacted to prevent and has had the effect of preventing the Postal Service's sale of the Berkeley Main Post Office property.

44.     Insofar as it regulates the Postal Service's disposition of the Berkeley Main Post Office property, the Berkeley Municipal Code Chapter 23E.98, Civic Center District Overlay violates the Supremacy Clause, and is invalid.

45.     By reason of the foregoing, Plaintiff has suffered and continues to suffer irreparable harm for which it has no adequate remedy except by this action.

## SECOND CAUSE OF ACTION

## PREEMPTION UNDER FEDERAL LAW

46. Plaintiff hereby incorporates paragraphs 1 through 41 of the Complaint as if fully stated herein.

47. Insofar as it regulates the Berkeley Main Post Office property, Berkeley Municipal Code Chapter 23E.98, Civic Center District Overlay is preempted by federal law because it conflicts with federal law, and impedes the accomplishment and execution of the full purposes and objectives of federal law, including the Postal Clause of the Constitution, U.S. Const. art. I, § 8, cl. 7, the Property Clause of the Constitution, U.S. Const. art. IV, § 3, cl. 2, and the Postal Reorganization Act of 1970, 39 U.S.C. §§ 401(5), 403(b)(3), 404(a)(3).

48. By reason of the foregoing, Plaintiff has suffered and continues to suffer irreparable harm for which it has no adequate remedy except by this action.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enter a judgment declaring that Berkeley Municipal Code Chapter 23E.98, Civic Center District Overlay is invalid, null, and void insofar as it purports to regulate the Berkeley Main Post Office property;

2. That this Court enter a permanent injunction, enjoining the City of Berkeley and its successors, agents, and employees, from applying or enforcing Berkeley Municipal Code Chapter 23E.98, Civic Center District Overlay against the Berkeley Main Post Office, and from targeting the Berkeley Main Post Office through substantially similar Ordinances designed to prevent the sale of the Property;

3. That this Court award the United States Postal Service its costs in this action; and

4. That this Court award any other relief it deems just and proper.

1  Dated this 22 day of August, 2016.          Respectfully submitted,

3  OF COUNSEL:                                 BENJAMIN C. MIZER
                                               Principal Deputy Assistant Attorney General
4  JANINE CASTORINA
   Attorney                                    JOSEPH H. HUNT
5  Appellate and Commercial Litigation         Branch Director
   United States Postal Service
6  475 L'Enfant Plaza, SW                      JACQUELINE COLEMAN SNEAD
7  Washington, DC, 20260                       Assistant Branch Director
   Phone: (202) 268-3069
8  Fax: (202) 268-2049                          /s/ Julia A. Berman
   E-mail: Janine.Castorina@usps.gov
9
                                               JULIA A. BERMAN, Bar No. 241415
10                                             United States Department of Justice
                                               Civil Division, Federal Programs Branch
11                                             20 Massachusetts Avenue, N.W.
                                               Washington, D.C. 20001
12                                             Tel: (202) 616-8480
13                                             Fax: (202) 616-8470
                                               Email: julia.berman@usdoj.gov
14
15                                             *Counsel for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28