ZACH COWAN, City Attorney (SBN 96372)
SAVITH IYENGAR, Deputy City Attorney (SBN 268342)
ZCowan@cityofberkeley.info
CITY OF BERKELEY
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
TEL.:  (510) 981-6998
FAX:   (510) 981-6960

Attorneys for Defendant
CITY OF BERKELEY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE,<br><br>          Plaintiff,<br><br>     vs.<br><br>CITY OF BERKELEY<br><br>          Defendant. | Civ. No. 16-cv-04815WHA<br><br>**DEFENDANT CITY OF BERKELEY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR:**<br><br>**(1) LACK OF SUBJECT MATTER JURISDICTION UNDER F.R.C.P. 12(b)(1)**<br><br>**AND**<br><br>**(2) FAILURE TO STATE A CLAIM UNDER F.R.C.P. 12(b)6)**<br><br>Date:  Dec. 1, 2016<br>Time:  8:00 a.m.<br>Ctrm:  8, 19th Fl., San Francisco |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 1, 2016, at 8:00 a.m., or as soon thereafter as this matter may be heard by the Honorable William H. Alsup of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 8, Floor 19, San Francisco, California, defendant City of Berkeley will and hereby does move the

1

1   Court to dismiss the complaint of plaintiff United States Postal Service under Federal Rules of

2   Civil Procedure 12(b)(1) and 12(b)(6).

3         This motion is based on this notice, the supporting memorandum of points and authorities

4   set forth below, the pleadings and papers on file with the Court, oral argument of counsel, and all

5   other matters properly before this Court.

6

7   Dated:  October 27, 2016.              Respectfully submitted:

8                                          ZACH COWAN, City Attorney

9                                          By: _____/s/ Zach Cowan_____
                                                   ZACH COWAN, City Attorney
10                                                 Attorney for Defendant CITY OF BERKELEY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED .................................................2

III.    STATEMENT OF FACTS ......................................................................................2

IV.     ARGUMENT ...........................................................................................................4

        A.      There Is No Case or Controversy Because the Postal Service Has No
                Plan To Sell The Property

        B.      This Action is Time-Barred ......................................................................8

        C.      The Historic Overlay Has Only an Indirect Effect on the Postal Service's Use Of
                The Property; Accordingly The Complaint Fails To State A Claim for Relief .....11

V.      CONCLUSION.....................................................................................................16

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bova v. City of Medford*,
564 F.3d 1093 (9th Cir. 2009) .................................................................................4

*California v. United States*,
No. C 05-00328 JSW, 2008 WL 744840 (N.D. Cal. Mar. 18, 2008) .......................4

*Clapper v. Amnesty*,
133 S. Ct. 1138 (2013) ............................................................................................4

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993) ...............................................................................................13

*DelCostello v. International Brotherhood of Teamsters*,
462 U.S. 151 (1983) .................................................................................................9

*Gibson v. United States*,
781 F.2d 1334 (9th Cir. 1986) .................................................................................9

*Goodman v. Lukens Steel Co.*,
482 U.S. 656 (1987) .................................................................................................9

*Johnson v. Lucent Techs. Inc.*,
653 F.3d 1000 (9th Cir. 2011) ............................................................................ 9-10

*Jones v. R.R. Donnelley & Sons Co.*,
541 U.S. 369 (2004) ........................................................................................... 9-10

*Levin v. City & Cty. of San Francisco*,
71 F. Supp. 3d 1072 (N.D. Cal. 2014) .....................................................................4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................................................................4

*Lukovsky v. City & Cty. of San Francisco*,
535 F.3d 1044 (9th Cir. 2008) ...............................................................................10

*Merritt v. Armijo*,
872 F.2d 429 (9th Cir. 1989) ...................................................................................9

*Middletown Tp. v. N/E Regional Office, U.S. Postal Service*,
601 F. Supp. 125 (D. N.J. 1985) ...........................................................................12

*In re Nat'l Sec. Agency Telecomms. Records Litig.*,
633 F.Supp.2d 892 (N.D. Cal. 2007) ..........................................................13, 15, 16

## <u>TABLE OF AUTHORITIES (CON'T.)</u>

**Page(s)**

**Federal Cases**

*North Dakota v. United States,*
    495 U.S. 423 (1990) ................................................................................ 14-15, 16

*Ohio Forestry v. Sierra Club,*
    523 U.S. 726 (1998) .................................................................................... 4-5

*Penn Dairies v. Milk Control Commission of Pennsylvania,*
    318 U.S. 261 (1943) ................................................................................ 13-14, 16

*Scott v. Pasadena Unified School Dist.,*
    306 F.3d 646 (9th Cir. 2002) ............................................................................ 4

*Stewart v. U.S. Postal Service,*
    508 F. Supp. 112 (N.D. Cal. 1980) .................................................................. 12

*Texas v. United States,*
    523 U.S. 296 (1998) ...................................................................................... 4

*Thomas v. Union Carbide Ag. Products Co.,*
    473 U.S. 568 (1985) ...................................................................................... 4

*United States v. City of St. Louis, Branch 343, Nat. Ass'n of Letter Carriers, AFL-
CIO,*
    597 F.2d 121 (8th Cir. 1979) ......................................................................... 12

*United States v. State Corporation Commission of Commonwealth of Virginia*
    345 F.Supp. 843, 846 (E.D. Va. 1972), *aff'd sub nom.,* 409 U.S. 1094 (1973) ............... 14, 16

*United States v. West Virginia,*
    339 F.3d 212 (4th Cir. 2003) .......................................................................... 14

*Wilson v. Garcia,*
    471 U.S. 261 (1985) ....................................................................................... 9

**California Cases**

*Devita v. County of Napa,*
    889 P.2d 1019 (Cal. 1995) ........................................................................ 13, 14

**Federal Statutes**

28 U.S.C.
    § 1658(a) ............................................................................................... 9, 10

**Federal Statutes (Con't.)**

39 U.S.C. (Postal Reorganization Act of 1970)
§ 101 ............................................................................................9, 10, 11
§ 401(5) ..........................................................................................11, 12
§ 403(b)(3) .............................................................................................10
§ 404(a)(3) ......................................................................................11, 12
§ 409(b) ...................................................................................................9

42 U.S.C.
§ 1981 ....................................................................................................10
§ 1983 ......................................................................................................9
§ 4321 ......................................................................................................1

54 U.S.C.
§ 306108 ..................................................................................................1

Pub.L. 101-650, Title III
§ 313(a), Dec. 1, 1990, 104 Stat. 5114 ...................................................9

**California Statutes**

Cal. Gov. Code
§ 36937 ....................................................................................................3
§ 65009(c)(1)(B) ...................................................................................2, 9

**Other Authorities**

U.S. Const. art IV, § 3, cl. 2 ........................................................................11

City of Berkeley Charter, § 93 .......................................................................3

# I.

# INTRODUCTION

The Postal Service has challenged a zoning ordinance amendment (the "Historic Overlay") adopted by the City of Berkeley in 2014, which limits permissible uses in the City's preexisting Civic Center Historic District. The Postal Service objects to the Historic Overlay on the ground that its limitations on permitted land uses indirectly prevent the Postal Service from selling its property at 2000 Allston Way (the Main Berkeley Post Office; also the "Property") for the price it desires and has "dissuaded the Postal Service from relisting the Property for sale…." (Dkt. 1, ¶ 40.) This dissuasion, according to the Postal Service, has "prevent[ed] the Postal Service from fulfilling its responsibilities under federal law" and "impede[d] the accomplishment and execution of the full purposes and objectives of federal law." (Dkt. 1, ¶ 1.)  Accordingly, the Postal Service seeks a declaratory judgment that the Historic Overlay is invalid. (Dkt. 1, ¶ 2.)

This action is barred for three reasons.

First, this case is unripe. When the Historic Overlay was adopted, the Postal Service had made a formal decision to sell the Property and had even entered into a purchase and sale contract. (Dkt. 1, ¶¶ 35 & 39.) After the City challenged this decision under NEPA (42 U.S.C. 4321, *et seq*.) and Section 106 of the NHPA (54 U.S.C. 306108; "Section 106") (Dkt. 1, ¶ 38), the Postal Service moved to dismiss the City's case on the ground that it was moot because its sale of the Property had fallen through,[1] and this motion was granted.[2]

As a result this action presents a hypothetical issue, which may or may not arise in the future under some as yet unknown set of market conditions, or even zoning regulations. For all we know, the Historic Overlay may be repealed at some point in the future, or new and different zoning regulations may be adopted, for instance, if the parties sit down together as public agencies and are able to agree on a redevelopment plan for the Property, as suggested by the City

---

[1]  *City of Berkeley, et al. v. U.S. Postal Service, et al*, C14-04916-WHA, Dkt. 47. This and the other pleadings from Case No. C14-04916-WHA cited in this brief are attached to the Request for Judicial Notice filed herewith. The two cases have been related.

[2]  *City of Berkeley, et al. v. U.S. Postal Service, et al*, C14-04916-WHA, Dkt. 56.

1 Council in 2015. (Dkt. 1, ¶ 41, quoting City Council Resolution No. 67,128-N.S.) In other

2 words, the predicate to this action's ripeness is a decision to sell the Property, which would

3 require the Postal Service to defend the legality of that decision against the challenge the Postal

4 Service previously claimed was unripe. But if that case is moot, then this one is unripe. If not,

5 and the Postal Service has now made a decision to sell the Property, it needs to let the Court and

6 the parties know, so that the City can finally test the validity of that decision.

7       Second, the applicable limitations period under California law for challenging the

8 adoption of an amendment to a zoning ordinance is 90 days. (Cal. Gov. Code § 65009(c)(1)(B).)

9 There is no dispute that this period has long since passed. (Dkt. 1, ¶¶ 35-38.)

10       Third, the Postal Service has failed to state a claim for relief because the Historic Overlay

11 has no impact on its operation of the Property. The City does not question that the Postal Service

12 itself is not subject to local regulation, and that is not the Postal Service's complaint in any event.

13 Rather, the Postal Service complains that the Historic Overlay would affect hypothetical future

14 non-governmental owners. That does not arise to the level of an interference with its

15 constitutional or statutory authority or powers and is not invalid under the Supremacy Clause nor

16 preempted by any law.

17 **II.**

18 **STATEMENT OF ISSUES TO BE DECIDED**

19 1. Whether the Postal Service has standing to maintain this action, and therefore whether the

20     Court has subject matter jurisdiction, given that the Postal Service has confirmed to this

21     Court that it has no plans to sell the Property.

22 2. Whether this action is time-barred under the 90-day limitations period in California

23     Government Code section 65009(c)(1)(B).

24 3. Whether an exercise of the City's zoning power that does not apply to the Postal Service

25     can support a claim under the Supremacy Clause or the preemption doctrine.

26 **III.**

27 **STATEMENT OF FACTS**

28 In 2012 the Postal Service decided to sell the Main Berkeley Post Office at 2000 Allston

2

1   Way. (Dkt. 1, ¶¶ 13-14.) The Property is located within the City's previously-designated Civic

2   Center Historic District.[3] (Dkt. 1, Exh. 1 & Exh. 2.) The City opposed the sale of this historic

3   building. (Dkt. 1, ¶¶17-18.)

4           In October 2013, the Postal Service began marketing the Property for sale. (Dkt. 1, ¶ 16.)

5   Thereafter, the Postal Service began the consultation process required by Section 106, but

6   terminated it without agreement between the parties involved. (Dkt. 1, ¶¶ 21-26.)[4]

7           On September 9, 2014, the City adopted the first reading of the Historic Overlay. (Dkt. 1,

8   ¶ 32.)  Almost two weeks later, on September 22, 2014, the Postal Service entered into an

9   agreement for sale of the Property with a local developer that had submitted a bid on the

10  Property. Apparently, the Postal Service anticipated that the buyer would try to negotiate with

11  the City for necessary amendments to the Historic Overlay, but for some reason did not provide

12  it enough time to do so successfully. (Dkt. 1, ¶ ¶ 36-37.)

13          Under the purchase agreement – which was evidently contingent – the sale was to close

14  by December 22, 2014. (Dkt. 1, ¶ 35.)  The City adopted the second reading of the Historic

15  Overlay on September 30, 2014. (Dkt. 1, ¶ 36.)[5]  In November 2014, the City filed suit against

16  the Postal Service under Section 106 and NEPA, challenging the sale. (Dkt. 1, ¶ 38.) In

17  December 2014, the developer cancelled the purchase agreement. (Dkt. 1, ¶ 39.)

18          It is significant that, as far as we can tell from the Complaint, at no time did the

19  prospective purchaser or the Postal Service propose to the City a specific project for

20  redevelopment of the Property. In effect, absent a specific proposal, the City was being offered a

21  pig in a poke. Accordingly, it adopted the Historic Overlay zoning regulations. (Dkt. 1, Exh. 1.)

22

23

24  [3]   This district was designated pursuant to the City's Landmarks Preservation Ordinance, which
    is referred to as "Chapter 3.24" in the Historic Overlay. (Dkt. 1, Exh. 1, § 23E.98.010) and has

25  since been included in the National Register of Historic Places. (Request for Judicial Notice,
    Exh. E.)

26  [4]   The Postal Service's account of the consultations under Section 106, the parties involved, and
    the outcome is, to say the least, one-sided. We will fill in the picture when and if necessary.

27  [5]   The Complaint alleges that the Historic Overlay "went into effect" on September 30. Actually,

28  this was the date of its second reading, and it took effect 30 days thereafter.  (Cal. Gov. Code §
    36937; City of Berkeley Charter, § 93.)

1    The Historic Overlay applies to nine parcels, five of them owned by the City. The others

2    are owned by the YMCA, the Berkeley Unified School District (two), and the Postal Service.

3    (Dkt. 1, ¶ 32 & Exh. 1.) In light of the potentially huge impact of the redevelopment of the

4    Property on the integrity of the pre-existing Civic Center Historic District, the Historic Overlay

5    seeks to preserve the character of land uses in the area. As with virtually all zoning ordinances, it

6    does not operate to terminate preexisting legal uses. (Cf. Dkt. 1, ¶ 34.)

7                                                  **IV.**

8                                           **ARGUMENT**

9    **A.    There Is No Case or Controversy Because the Postal Service Has No Plan To Sell**

10         **The Property**

11    The "ripeness doctrine is drawn both from Article III limitations on judicial power and

12    from prudential reasons for refusing to exercise jurisdiction." *California v. United States*, No. C

13    05-00328 JSW, 2008 WL 744840, at *2 (N.D. Cal. Mar. 18, 2008).  The Ninth Circuit has

14    described ripeness as "standing on a timeline." *Bova v. City of Medford*, 564 F.3d 1093, 1096

15    (9th Cir. 2009).  Cases are unripe if they do not *yet* have an actual or imminent impact upon the

16    parties. *Thomas v. Union Carbide Ag. Products Co.*, 473 U.S. 568, 580 (1985).  A claimed

17    threatened injury is not yet imminent until it is "certainly impending." *Clapper v. Amnesty*, 133

18    S. Ct. 1138, 1147-53 (2013).  The injury cannot be "conjectural or hypothetical." *Lujan v. Defs.*

19    *of Wildlife*, 504 U.S. 555, 5590560 (1992). Nor can it rely on "contingent future events that may

20    not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296,

21    300 (1998).  A case remains unripe until the future event is no longer "contingent." *Levin v. City*

22    *& Cty. of San Francisco*, 71 F. Supp. 3d 1072, 1079 (N.D. Cal. 2014).

23    The "basic rationale of the ripeness doctrine is to prevent the courts, through avoidance

24    of premature adjudication, from entangling themselves in abstract disagreements." *Scott v.*

25    *Pasadena Unified School Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (internal quotation marks and

26    citation omitted).  The Court must evaluate "both the fitness of the issues for judicial decision

27    and the hardship to the parties of withholding court consideration." *Id.*  Alleged issues are unfit

28    for courts' consideration where "further factual development would significantly advance our

ability to deal with the legal issues presented and would aid us in their resolution." *Ohio Forestry v. Sierra Club*, 523 U.S. 726, 736-37 (1998).

The Postal Service has concisely stated the gist of its objection to the Historic Overlay:

> By prohibiting any commercially viable uses, the Zoning Ordinance has interfered with the Postal Service's disposition of the Property.

(Dkt. 1, ¶ 1.)

This may or may not have been true at the time the Historic Overlay was adopted. But the Postal Service has repudiated its decision to sell the Property in a filing before this very Court. (Dkt. 1, ¶ 39 & fn. 2.) It currently has no plans to sell the Property. There is accordingly no case or controversy for this Court to determine. Even accepting *arguendo* the Postal Service's theory that not allowing it sell the Property for the maximum amount it thinks it ought to be able to get somehow violated the Supremacy Clause or was preempted, it is not seeking to do so now. Rather, its complaint is that it has been "dissuaded… from relisting the Property for sale…." (Dkt. 1, ¶ 40.) But it is not the job of the federal courts to reassure federal agencies about hypothetical courses of action.

As noted above, the Postal Service sought dismissal of the City's lawsuit against its decision to sell the Property on the ground that the sale had fallen through, and the case was therefore moot. [6] The Postal Service concisely summed up its argument as follows:

> Based on a speculative and abstract set of circumstances that may or may not come to pass [the City is] asking the Court and [the Postal Service] to bear the burdens of litigation, forced to grapple with hypothetical possibilities rather than immediate fact…. The keystone to any Postal Service decision to sell a building and relocate services—and hence, [the City's] lawsuit—is the purchase and sale agreement. The Postal Service reached one when it decided to sell the building to a developer in late 2014. But that agreement was later terminated. And the property is no longer for sale.[7]

The City argued that its case was not moot "despite the fact that the original buyer backed out,

---

[6]   *City of Berkeley, et al. v. U.S. Postal Service, et al*, C14-04916-WHA, Dkt. 47.
[7]   *City of Berkeley, et al. v. U.S. Postal Service, et al*, C14-04916-WHA, Dkt. 50-1, 2:1-8.

1   the property is not currently listed for sale, and the USPS rescinded the final determination

2   regarding relocation" [8]

3         In response to a request from this Court for a clarification of the Postal Service's position,

4   the Postal Service explained that its decision to relocate retail services from the Property (and

5   therefore necessarily its decision to sell the Property) had been rescinded.[9] The Court granted the

6   Postal Service's motion to dismiss:

> Under Rule 12(b)(1), the "basic question in determining mootness is
> whether there is a present controversy as to which effective relief can be granted."
> *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quoting *Nw. Envtl. Def.
> Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988)). Moreover, in reviewing
> agency decisions, "federal courts lack power to make a decision unless the
> plaintiff has suffered an injury in fact, traceable to the challenged action, and
> likely to be redressed by a favorable decision." *Snake River Farmers' Ass'n v.
> Dep't of Labor*, 9 F.3d 792, 795 (9th Cir. 1993).

> When a plaintiff seeks declaratory relief, as here, the "test for mootness . .
> . is 'whether the facts alleged, under all the circumstances, show that there is a
> substantial controversy, between parties having adverse legal interests, of
> sufficient immediacy and reality to warrant the issuance of a declaratory
> judgment.'" *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174–75 (9th
> Cir. 2002) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273
> (1941)).

> This order holds that the case is moot because (1) Hudson McDonald
> terminated the sales agreement and (2) the USPS has rescinded the 2013 final
> determination, such that if USPS later decides to relocate, it will go through
> the process all over again under 39 C.F.R. 241.4.

> Moreover, in late 2014, the City of Berkeley passed new zoning
> restrictions on the district in which the Berkeley Main Post Office resides. The
> zoning overlay goes so far as to permit only the following new uses in the Civic
> Center District: libraries; judicial courts; museums; parks and playgrounds; public
> safety and emergency services; government agencies and institutions; public
> schools/educational facilities; non-profit cultural, arts, environmental, community
> service and historic organizations; live performance theatre; and a public market
> (Berkeley City Ordinance No. 7,370-N.S., Chapter 23E.98). This will
> substantially shrink the possible universe of purchasers or alternative users for the
> building, making it ever more unlikely that the controversy will ever rise from the
> dead.

> Our court of appeals has definitively held that: "A case or controversy
> exists justifying declaratory relief only when 'the challenged government activity
> . . . is not contingent, has not evaporated or disappeared, and, by its continuing
> and brooding presence, casts what may well be a substantial adverse effect on the

---

[8]   *City of Berkeley, et al. v. U.S. Postal Service, et al*, C14-04916-WHA, Dkt. 56, at pp. 5-6.
[9]   *City of Berkeley, et al. v. U.S. Postal Service, et al*, C14-04916-WHA, Dkt. 54.

interests of the petitioning parties.'" *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*, 893 F.2d 1012, 1015 (9th Cir. 1990) (quoting *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122 (1974)).

The three agency actions that plaintiffs still challenge, now that the pending sale has evaporated and the relocation decision has been rescinded, are intermediate steps that do not bind the USPS to anything. Any injury plaintiffs could conceivably suffer in the future turns on several unknown contingencies, such as: (a) an actual decision to re-list the property; (b) the existence of a contract binding the USPS to a sale and/or a contract binding the USPS to relocation; and (c) that the terms of that future sale and/or relocation, and the actions taken by the USPS leading up to them, actually violate NEPA and the NHPA. These hypothetical events are "too uncertain, and too contingent upon the [defendant's] discretion, to permit declaratory adjudication predicated on prejudice to [plaintiff's] existing interests." *Headwaters*, 893 F.2d at 1015–16.

In *Nome Eskimo Community. v. Babbitt*, 67 F.3d 813 (9th Cir. 1995), our court of appeals reviewed similar facts to those in our case. In *Nome*, the United States Department of the Interior announced that it planned to accept bids for the right to lease areas of the Norton Sound in Alaska for gold dredging. The plaintiffs then sued for an injunction enjoining the leases and for a declaratory judgment establishing plaintiffs' rights to the land at issue. Before the district court could rule on the injunction, the government announced that it had received no bids for the property, that no lease was pending, and that the property was no longer listed for lease. Our court of appeals affirmed the district court's dismissal of the case as moot. In doing so, our court of appeals stated: "Plaintiffs have suggested that, even absent a continuing case or controversy, we should provide a declaration of their rights in the Norton Sound area. However, a declaratory judgment may not be used to secure judicial determination of moot questions." *Id.* at 816.[10]

The Court retained jurisdiction for five years, and required the Postal Service to provide 42 days advance notice of any future sale of the Property. (Dkt. 1, ¶ 39 & fn. 2.)

As of this writing, to the best of the City's knowledge, the Postal Service has not "go[ne] through the entire process all over again," nor has it alleged that it has done so. Accordingly, the former case still being moot, this one is unripe. Indeed, as the Postal Service admits, the Historic Overlay has merely "dissuaded the Postal Service from relisting the Property for sale…." (Dkt. 1, ¶ 40.)  Its use of the term "dissuaded" highlights that this case is unripe *because of a decision by the Postal Service*, while it refuses to take responsibility for its own litigation decision to rescind its decision to sell the Property. In summary:

- The Postal Service evaded the City's challenge to the legal validity of its decision to sell the Property by rescinding its decision to do so.

---

[10]   *City of Berkeley, et al. v. U.S. Postal Service, et al*, C14-04916-WHA, Dkt. 56, at pp. 3-6.

7

1   • It has not taken the required steps "all over again" to formally decide to sell the

2   Property.

3   • It now wishes to challenge the Historic Overlay on the ground that it is a barrier to a

4   course of action the Postal Service has not elected to take.

5   But going through those steps and making that decision – and possibly defending that decision

6   against the challenges that the Postal Service claims are moot – is the predicate to this action

7   being ripe. In a nutshell, if that case is still moot, then this one is unripe.

8   Absent a decision to sell the Property, the Postal Service is asking the Court to address a

9   hypothetical issue: *If* the Postal Service decided to sell the Property, and *if* it could otherwise

10   come to terms with a buyer, would the Historic Overlay *necessarily* be an insurmountable barrier

11   to a sale? Answering this question depends on other significant factors that are not amenable to

12   resolution by the Court in this case:

13   • What is the minimum price acceptable to the Postal Service?

14   • What is the minimum acceptable price based on?

15   • Is the Postal Service's target price realistic to begin with given the likely costs of

16   seismically retrofitting the building?

17   • If the prospective purchaser proposed a desirable redevelopment project for the

18   Property, would the City amend or repeal the Historic Overlay to facilitate such

19   development?

20   • Would it depend on the nature and magnitude of the proposed redevelopment of the

21   Property?

22   As the Postal Service stated, "The keystone to any Postal Service decision to sell a

23   building and relocate services—and hence, [the City's] lawsuit—is the purchase and sale

24   agreement." Absent such an agreement – absent even a decision to sell the Property – there is no

25   case or controversy justifying declaratory relief because the dispute remains contingent. There is

26   no concrete controversy to be decided, and the case is unripe.

27   **B.**   **This Action is Time-Barred**

28   The Postal Service seeks a declaratory judgment that the Historic Overlay – a zoning

8

1   ordinance amendment adopted by the City – is invalid. (Dkt. 1, ¶ 2.)

2          The general rule in federal courts is that the applicable state law statute of limitations

3   governs federal actions. "When Congress has not established a time limitation for a federal cause

4   of action, the settled practice has been to adopt a local time limitation as federal law if it is not

5   inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266–267

6   (1985); *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983).

7   Where a federal statute is silent with respect to the applicable limitations period, courts apply the

8   "most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.,* 482

9   U.S. 656, 660 (1987).  "Although state law prescribes the statute of limitations applicable to

10  claims under 42 U.S.C. § 1983, federal law governs time of accrual. *Gibson v. United States,* 781

11  F.2d 1334, 1340 (9th Cir. 1986)." *Merritt v. Armijo*, 872 F.2d 429 (9th Cir. 1989).

12         In this case, the applicable limitations period under California law for challenging the

13  adoption of an amendment to a zoning ordinance is 90 days. (Cal. Gov. Code § 65009(c)(1)(B).)

14  There is no dispute that that period has long since passed. (Dkt. 1, ¶¶ 32 & 36.)

15         The Postal Service will presumably claim its statutory claims are not subject to the

16  normal rule because the Postal Reorganization Act (39 U.S.C. §§ 101 *et seq.*) ("PRA")

17  incorporates the four year statute of limitations in 28 U.S.C. § 1658(a) for civil actions.[11] Section

18  1658(a) states that "a civil action arising under an Act of Congress enacted after the date of the

19  enactment of this section may not be commenced later than 4 years after the cause of action

20  accrues." 28 USC § 1658(a). Section 1658(a) was enacted on December 1, 1990. *See,* Pub.L.

21  101-650, Title III, § 313(a), Dec. 1, 1990, 104 Stat. 5114. Thus, the four-year statute of

22  limitations applies only to civil actions arising under an Act of Congress that was enacted after

23  December 1, 1990. "[A] cause of action 'arises under an Act of Congress enacted' after

24  December 1, 1990—and therefore is governed by §1658's 4 year state of limitations—if the

25  plaintiff's claim against the defendant *was made possible* by a post-1990 enactment." *Jones v.*

26

27  [11]  "The provisions of Title 28 relating to service of process, venue, and limitations of time . . .
    shall apply in like manner to suits in which the Postal Service, its officers, or employees are
28  parties." 39 USC § 409(b).

*R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (emphasis supplied); *accord. Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1006 (9th Cir. 2011); *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 n.2 (9th Cir. 2008).

Here, the Postal Service is relying on PRA sections 401(5), 403(b)(3), and 404(a)(3), all of which were adopted in 1970. 39 USC §§ 101 *et seq.*, Pub.L. 91-375, Aug. 12, 1970, 84 Stat. 719. (Dkt. 1, ¶¶ 2 & 47.) None of these sections has been amended since 1970 in a way that enables, or is even material to, this lawsuit.

Section 401(5) states that one of the Postal Service's "general powers" is the power:

> to acquire, in any lawful manner, such personal or real property, or any interest therein, as it deems necessary or convenient in the transaction of its business; to hold, maintain, sell, lease, or otherwise dispose of such property or any interest therein; and to provide services in connection therewith and charges therefor[.]

This language has not changed since 1970.

Section 403(b)(3) states that it is the responsibility of the Postal Service to "to establish and maintain postal facilities of such character and in such locations, that postal patrons throughout the Nation will, consistent with reasonable economies of postal operations, have ready access to essential postal services."  This also has not changed since 1970.

Section 404(a)(3) states that a "specific power" of the Postal Service is "to determine the need for post offices, postal and training facilities and equipment, and to provide such offices, facilities, and equipment as it determines are needed." This language has not been amended since 1970, although in 2006 this power was made subject to the limitation that it is "subject to the provisions of section 404a," which imposes a number of specific limitations on the Postal Service's powers, none of them relating to the disposition of real property.

In *Jones*, the plaintiffs alleged hostile work environment, wrongful termination, and failure to transfer claims in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. *Jones*, *supra*, 541 U.S. at 369-370. These claims were based specifically on language that had been added by amendment through the Civil Rights Act of 1991 defining the phrase "to make and enforce contracts." *Id.* The court therefore held that these claims were subject to Section 1658(a) because they "were made possible by [the 1991 amendments]." *Id.* at 383.

10

Here, however, the Postal Service's claims are all well within the scope of – and made possible by – the pre-1990 language of the PRA. The Postal Service's statutory claims, and this action as a whole, are therefore time-barred.

**C.   The Historic Overlay Has Only an Indirect Effect on the Postal Service's Use Of The Property; Accordingly The Complaint Fails To State A Claim for Relief**

The gist of the Postal Service's Supremacy Clause and preemption claims is set forth in paragraphs 9-11 of the Complaint.

9.   The Postal Clause of the Constitution provides that Congress may "establish Post Offices and post Roads." U.S. Const. art. I, § 8, cl. 7. Congress delegated that authority to the Postal Service through legislation including the Postal Reorganization Act of 1970, 39 U.S.C. §§ 101–5605.

10. The Postal Reorganization Act provides that: "It shall be the responsibility of the Postal Service . . . to establish and maintain postal facilities of such character and in such locations, that postal patrons throughout the Nation will, consistent with reasonable economies of postal operations, have ready access to essential postal services." 39 U.S.C. § 403(b)(3).

11. The Postal Reorganization Act empowers the Postal Service "to determine the need for post offices, postal and training facilities and equipment, and to provide such offices, facilities and equipment as it determines are needed," 39 U.S.C. § 404(a)(3), and "to hold, maintain, sell, lease, or otherwise dispose of such property or any interest therein," *id.* at § 401(5).

The first cause of action is for violation of the Supremacy clause:

44. Insofar as it regulates the Postal Service's disposition of the Berkeley Main Post Office property, the Berkeley Municipal Code Chapter 23E.98, Civic Center District Overlay violates the Supremacy Clause, and is invalid.

The second cause of action is based on preemption by the Postal Reorganization Act and the Postal and Property clauses of the Constitution:

47. Insofar as it regulates the Berkeley Main Post Office property, Berkeley Municipal Code Chapter 23E.98, Civic Center District Overlay is preempted by federal law because it conflicts with federal law, and impedes the accomplishment and execution of the full purposes and objectives of federal law, including the Postal Clause of the Constitution, U.S. Const. art. I, § 8, cl. 7, the Property Clause of the Constitution, U.S. Const. art. IV, § 3, cl. 2, and the Postal Reorganization Act of 1970, 39 U.S.C. §§ 401(5), 403(b)(3), 404(a)(3).

The Postal Service "seeks a declaratory judgment that the Zoning Ordinance, insofar as it regulates the Property, is invalid under the Supremacy Clause and is preempted by federal law.

1    Plaintiff also seeks injunctive relief to permanently enjoin application and enforcement of the

2    Zoning Ordinance with respect to the Property."[12] (Dkt. 1, ¶ 2.)

3         Under the Postal Service's rationale, it could designate a target price that was entirely

4    unrealistic, and then claim that the zoning – whatever it might be – interfered with a sale at that

5    price because it limited the future development of its property post-sale to a private party.

6         It is axiomatic that "the Postal Service is not bound to observe [local] land use

7    regulations…." *Middletown Tp. v. N/E Regional Office, U.S. Postal Service*, 601 F. Supp. 125,

8    128 (D. N.J. 1985); *Stewart v. U.S. Postal Service*, 508 F. Supp. 112, 116 (N.D. Cal. 1980)

9    (Supremacy Clause obviates the need for compliance with local zoning ordinances where the

10   ordinances conflict with federal law).  But the Postal Service has not alleged that the City is

11   trying to apply the Historic Overlay to it or to regulate its activities. Indeed, the Historic Overlay

12   *supports* continued postal operations. (Dkt. 1, Exh. 1, § 23E.98.020(F).)[13]  There is no basis to

13   preempt the Historic Overlay because it does not interfere with the Postal Service's ability to

14   establish post offices or post roads, provide postal services to the community or satisfy its

15   financial obligations to the Department of Treasury.

16        The constitutional and statutory provisions cited by the Postal Service all provide

17   authority for the Postal Service to acquire, manage and sell its property (39 U.S.C. §§ 401, 404),

18   but the none of them guarantee the Postal Service the right to secure a commercial buyer for the

19   sale of its properties at whatever price it has in mind. And there is no authority for the proposi-

20   tion that a court may exempt a non-government landowner from local land use regulations

21   simply because it obtained a parcel of land from the federal government.[14] Rather, the issue is

22   whether local zoning regulation of future uses of the Property after it is conveyed to a private

23

24

25   12   Well, not exactly. The declaratory relief the Postal Service seeks is more accurately stated as follows: "…that the Zoning Ordinance, insofar as it would regulate ~~regulates~~ the Property after it is transferred out of the Postal Service's ownership is invalid under the Supremacy Clause and is

26   preempted by federal law."

27   13   This being the case, the Historic Overlay, even if applied to the Postal Service, would not be preempted or invalid under the Supremacy Clause. *See United States v. City of St. Louis, Branch 343, Nat. Ass'n of Letter Carriers, AFL-CIO*, 597 F.2d 121, 124 (8th Cir. 1979).

28   14   And how long would such exemption from local regulation last? Would it be permanent?

12

party is preempted because it has an alleged effect on the Postal Service's ability to realize the best price for the sale of the Property.

In determining whether a federal law preempts a state law, there is a presumption that in enacting laws, Congress does not intend to preempt state regulation of the same subject matter unless a contrary intent is made clear. "'In the interest of avoiding unintended encroachment on the authority of the States, . . . a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.'" *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663–64 (1993) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).[15]

In the past, courts struck down state regulations even if they only made it more costly for the federal government to perform its functions, but such broad federal preemption is a thing of the past. "The Supreme Court's modern-day treatment of the intergovernmental immunity doctrine has been marked by restraint.…" *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F.Supp.2d 892, 903–04 (N.D. Cal. 2007) ("*NSA Telecommunications Records*").

In *Penn Dairies v. Milk Control Commission of Pennsylvania*, 318 U.S. 261 (1943), the Supreme Court upheld a state regulation setting the minimum wholesale price for milk, which resulted in the federal government paying more for milk. The plaintiff argued, with the support of the United States, that the minimum wholesale price order violated the constitutional immunity of the United States. The Supreme Court rejected this argument, holding that absent congressional action to exempt the federal government from this type of economic burden, the Court was not inclined to infer such immunity from the constitution.

> The trend of our decisions is not to extend governmental immunity . . . .  We have recognized that the Constitution presupposes the continued existence of the states functioning in coordination with the national government, with authority in the states to lay taxes and to regulate their internal affairs and policy, and that state regulation like state taxation inevitably imposes some burdens on the national

---

[15]  Zoning regulations are an exercise of a state's general police power (*Devita v. County of Napa*, 889 P.2d 1019 (Cal. 1995)), and are thus entitled to a heightened presumption of validity.

government of the same kind as those imposed on citizens of the United States within the states' borders.  And we have held those burdens, save as Congress may act to remove them, are to be regarded as the normal incidents of the operation within the same territory of a dual system of government, and that no immunity of the national government from such burdens is to be implied from the Constitution which established the system . . . .

*Id.* at 270-71 (citations omitted).[16]

Notably, the Court stated further that "[e]ven in the case of agencies created or appointed to do the government's work we have been [hesitant] to infer an immunity which Congress has not granted and which Congressional policy does not require." *Id.*

Thus, the modern rule is to utilize a "functional approach" intended to reconcile each sovereign's legislative authority. The Supreme Court now recognizes state regulations as unconstitutional only if they "directly regulate the United States or discriminate against the federal government or against those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 434-435 (1990).  "It is one thing . . . to say that the State may not pass regulations which directly obstruct federal law; it is quite another to say that they cannot pass regulations which incidentally [affect the federal government]." *Id.* at 440-41.  Thus, a tax whose legal incidence is on a private party is not preempted or prohibited even if it indirectly imposed an economic burden on a federal function. *United States v. West Virginia*, 339 F.3d 212, 215-16 (4th Cir. 2003), citing *United States v. Fresno*, 429 U.S. 452, 462 (1977).

*North Dakota* is instructive here: there was no claim in that case that the challenged law regulated the federal government directly – it applied to alcohol suppliers – and it did not "discriminate against the Federal Government or those with whom it deals."  495 U.S. 423, 436-

[16]  Following *Penn Dairies*, in *United States v. State Corporation Commission of Commonwealth of Virginia*, the district court upheld a new telephone service rate imposed by a telephone company, with the approval of the state, for the Pentagon, under which it would be charged "not less than the charges to similarly geographically situated Virginia customers."  345 F.Supp. 843, 846 (E.D. Va. 1972), *aff'd sub nom.*, 409 U.S. 1094 (1973) ("*State Corporation Commission*"). The effect of the new rate resulted in the United States paying more for telephone service than it previously did.  The United States argued that the rate increase for telephone services violated the Supremacy Clause.  The decision in that case reiterated courts' longstanding refusal to infer immunity from such an economic burden on the United States absent clear federal directives. The Court stated, "[t]he absence of any evidence that there is a Federal policy dictating procurement of telecommunications at rates other than regularly established tariffs renders defective the United States' Supremacy claim." *Id.*

38. "Moreover, in analyzing the constitutionality of a state law, it is not appropriate to look to the most narrow provision addressing the Government or those with whom it deals. A state provision that appears to treat the Government differently on the most specific level of analysis may, in its broader regulatory context, not be discriminatory. We have held that '[t]he State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them.'" *Id*. at 438.

Similarly here, the Historic Overlay does not apply to the Postal Service (and even if it did it would be no hindrance), applies equally to all private parties within the overlay area regardless of their connection to the Postal Service (or lack thereof), and in its "broader regulatory context" is squarely grounded on the prior designation of the Civic Center Historic District.

Also instructive is *NSA Telecommunications Records*. 633 F.Supp.2d at 895-896. There, various states sought to investigate telecommunications companies concerning their alleged disclosure of customer telephone records to the National Security Agency. The federal government sought to enjoin these investigations "on the ground that the states' investigations are barred by the Supremacy Clause and the foreign affairs power of the federal government and because of the state secrets privilege." *Id*., at 896. This Court rejected the Supremacy Clause and foreign affairs power arguments. *Id*.

Using the analysis employed in *North Dakota*, this Court concluded:

- "Although the pertinent state disclosure orders… relate to federal government activities, they do not regulate the government directly; indeed, they impose no duty on the government…. That conclusion leaves no doubt that the state investigations operate on the carriers alone."

- "Nor can it be said that the investigations 'discriminate against the federal government or those with whom it deals.' The nondiscrimination rule prevents states from meddling with federal government activities indirectly by singling out for regulation those who deal with the government. This rule does not, however, oblige special treatment. A '[s]tate does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them.'"

- "The asserted laws at issue here regulate equally all public utilities, making no distinction based on the government's involvement. Although

15

the present investigation, in targeting alleged disclosure of call records to the NSA, may 'appear[ ] to treat the government differently,' the regulatory regime as whole treats any unauthorized disclosure the same. These neutral state laws regulating the carriers 'are but normal incidents of the organization within the same territory of two governments.'"

*Id.* at 903–04.  The Court's reasoning in *NSA Telecommunications Records* is particular relevant here because the case similarly involved state conduct that was generally applicable and neutral, but had a unique nexus to the federal government.

Likewise, *Penn Dairies*, *State Corporation Commission* and other federal cases involving taxation, *supra*, are directly analogous in that the sole effect of the challenged action is to place an economic burden on the federal government indirectly by taxing those with whom it does business. The same is true here, according to the Postal Service: the Historic Overlay imposes an economic burden on the Postal Service by regulating those who might be interested in purchasing the Property.

But that indirect – and at this point, speculative – impact on the federal government is permitted under the modern rule in *North Dakota* and its progeny. There is no preemption and no violation of the Supremacy Clause.

## V.

## CONCLUSION

For all of the foregoing reasons, this case should be dismissed in its entirety.

Dated:  October 27, 2016.

Respectfully submitted:

By:  _____/s/  Zach Cowan_____
ZACH COWAN, City Attorney
Attorney for Defendant City of Berkeley