BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
JACQUELINE COLEMAN SNEAD
Assistant Branch Director
JULIA BERMAN, CA. Bar No. 241415
Trial Attorney
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 616-8480; Fax: (202) 616-8470
Email: julia.berman@usdoj.gov
*Attorneys for the United States Postal Service*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED STATES POSTAL SERVICE, | ) | Case No. 16-cv-4815-WHA |
| Plaintiff, | ) | |
| v. | ) | |
| CITY OF BERKELEY | ) | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| Defendant. | ) | Date: Dec. 22, 2016 Time: 8:00 am Courtroom 8, 19th Floor Hon. William Alsup |

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 2

    A.    The Berkeley City Council Resolves to Oppose the Sale of the Property. ..................... 2

    B.    The Berkeley City Council Appeals the Decision to Sell the Property. ......................... 3

    C.    The Berkeley City Council Passes the Zoning Ordinance to Prevent the Sale of the Property and Also Files Suit to Enjoin the Sale. ................................. 4

ARGUMENT ....................................................................................................... 7

I.    Defendant's Motion Should Be Denied Because This Action Is Ripe. ............................. 8

    A.    The Zoning Ordinance Works a Definite and Concrete Injury to the Postal Service by Usurping and Attempting to Prohibit a Federal Function. ........................... 8

    B.    The Court Should Exercise its Jurisdiction Now Because the Issues Presented are Primarily Legal, and the Postal Service Continues to Suffer Harm While the Zoning Ordinance Remains in Effect. ......................... 12

II.    California Government Code Section 65009 Presents No Bar to this Action. ................. 15

III.    The Complaint States a Claim Upon Which Relief Can Be Granted Because the Supremacy Clause Bars the Regulation of a Federal Function or Interference with a Federal Function, Whether that Regulation or Interference Occurs Directly or Through a Third Party. ................................ 16

    A.    The Complaint States a Claim for Violation of the Supremacy Clause. ......................... 17

    B.    The Complaint States a Claim for Preemption by Federal Law. ................................. 21

CONCLUSION.................................................................................................... 24

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                         i

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Abbott Labs. v. Gardner,*
4
    387 U.S. 136 (1967) ................................................................................. 8, 12

5

*AES Sparrows Point LNG, LLC v. Smith,*
6
    470 F. Supp. 2d 586 (D. Md. 2007) ...................................................... 14

7

*Arizona v. United States,*
    132 S. Ct. 2492 (2012) ......................................................................... 13, 21
8

9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................. 16
10

11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................. 16

12

*Boeing v. Movassaghi,*
13
    768 F.3d 832 (9th Cir. 2014) .......................................................... 13, 17, 18

14

*Breeze v. Town of Bethlehem,*
    151 Misc. 2d 230 (N.Y. Sup. 1991) ...................................................... 22, 23
15

16

*California Ins. Guar. Ass'n v. Burwell,*
    170 F. Supp. 3d 1270 (C.D. Cal. 2016) ................................................... 15

17

*City of Berkeley v. USPS,*
18
    Civ. No. 3:14-cv-04916, 2015 WL 1737523 (Apr. 14, 2015) .................... 6, 7, 11, 20

19

*Clean Air Mkts. Grp. v. Pataki,*
20
    338 F.3d 82 (2d Cir. 2003) ........................................................................ 23

21

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,*
    438 U.S. 59 (1978) .................................................................................... 12
22

23

*Flamingo Indus. Ltd. (USA) v. U.S. Postal Serv.,*
    302 F.3d 985 (9th Cir. 2002) .................................................................... 21

24

*Hawaii Newspaper Agency v. Bronster,*
    103 F.3d 742 (9th Cir. 1996) ...................................................................... 8
25

26

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ................................................................................. 21, 22
27

28

*United States Postal Service v. City of Berkeley,* Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                    ii

*In re Nat'l Sec. Agency Telecomms. Records Litig.*,
  633 F. Supp. 2d 892 (N.D. Cal. 2007) ........................................................ 20

*Johnson v. Lucent Techs., Inc.*,
  653 F.3d 1000 (9th Cir. 2011) .................................................................. 16

*Johnson v. Maryland*,
  254 U.S. 51 (1920) .................................................................................... 17

*Leslie Miller, Inc. v. Arkansas*,
  352 U.S. 187 (1956) .................................................................................. 18

*M'Culloch v. Maryland*,
  17 U.S. 316 (1819) ............................................................................... 1, 17

*Maryland v. Louisiana*,
  451 U.S. 725 (1981) ........................................................................... 10, 13

*Mayo v. United States*,
  319 U.S. 441 (1943) ............................................................................ 1, 17

*North Dakota v. United States*,
  495 U.S. 423 (1990) .................................................................................. 20

*Novato Fire Prot. Dist. v. United States*,
  181 F.3d 1135 (9th Cir. 1999) ................................................................. 15

*Ogden Envtl. Servs. v. City of San Diego*,
  687 F. Supp. 1436 (S.D. Cal. 1988) ........................................................ 15

*Pacific Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
  461 U.S. 190 (1983) ........................................................................... 12, 13

*Penn Dairies v. Milk Control Comm'n of Pa.*,
  318 U.S. 261 (1943) .................................................................................. 20

*Perez v. Campbell*,
  402 U.S. 637 (1971) ............................................................................. 21–22

*Poe v. Ullman*,
  367 U.S. 497 (1961) .................................................................................... 8

*Shaw v. Reno*,
  509 U.S. 630 (1993) .................................................................................. 20

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir.2000) ..................................................................... 8

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                             iii

*Township of Middletown v. N/E Reg'l Office, US Postal Serv.*,
  601 F. Supp. 125 (D.N.J. 1985) ............................................................................... 17

*Twitter, Inc. v. Holder*,
  --- F. Supp. 3d ---, 2016 WL 1729999 (N.D. Cal. May 2, 2016)................................ 16

*U.S. Postal Serv. v. City of Hollywood*,
  974 F. Supp. 1459 (S.D. Fl. 1997) .............................................................. 18, 22, 23

*U.S. Postal Serv. v. Town of Greenwich*,
  901 F. Supp. 500 (D. Conn. 1995) .................................................................. 17, 22

*United States v. Alaska Pub. Utils. Comm'n*,
  23 F.3d 257 (9th Cir. 1994) .............................................................................. 1, 17

*United States v. City of Pittsburg*,
  467 F. Supp. 1080 (N.D. Cal. 1979) ........................................................................ 9

*United States v. City of Pittsburg*,
  661 F.2d 783 (9th Cir. 1981) ......................................................... 9, 10, 17, 21

*United States v. City of Pittsburgh*,
  757 F.2d 43 (3d Cir. 1985)...................................................................................... 9

*United States v. Dos Cabezas Corp.*,
  995 F.2d 1486 (9th Cir. 1993) ............................................................................... 16

*United States v. State Corp. Comm'n of Commonwealth*,
  345 F. Supp. 843 (E.D. Va. 1972) ......................................................................... 20

*United States v. Summerlin*,
  310 U.S. 414 (1940).......................................................................................... 15, 16

*United States v. Supreme Court of New Mexico*,
  839 F.3d (10th Cir. 2016) ............................................................................... 12, 13

*US West Commc'ns v. MFS Intelenet, Inc.*,
  193 F.3d 1112 (9th Cir. 1999) ............................................................................... 12

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) ........................................................................... 8, 12

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                          iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes**

16 U.S.C. § 470f ................................................................................................ 11

28 U.S.C. § 1658 ............................................................................................... 15

39 U.S.C. § 101 ........................................................................................ 2, 18, 19

39 U.S.C. § 401 ........................................................................................... *passim*

39 U.S.C. § 403 .................................................................................... 7, 14, 18, 19

39 U.S.C. § 404 .................................................................................... 7, 14, 18, 19

42 U.S.C. § 4332 ............................................................................................... 11

Cal. Gov't Code § 65009 ................................................................................... 15

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ......................................................... 16

**Constitution**

U.S. Const. art. I ............................................................................................... 18

U.S. Const. art. IV ............................................................................................ 23

U.S. Const. art. VI ............................................................................................ 17

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                             v

### INTRODUCTION

The Postal Service respectfully submits this opposition to the Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 11 ("Defendant's Motion" or "Def.'s Mot."). The Defendant, the City of Berkeley, enacted a Zoning Ordinance that was intended to and in fact has interfered with the Postal Service's constitutional and statutory authority to dispose of Postal Service property, specifically, the Berkeley Main Post Office. Although such interference is in clear violation of the Supremacy Clause and preemption principles, Defendant seeks to dismiss this action as unripe and for failure to state a claim.

As the Postal Service explained in its Complaint, the Zoning Ordinance has so devalued its property that the Postal Service has effectively been prevented from selling the property due to the depressed value. Arguing that the Postal Service has decided not to sell the property, Defendant now asserts that this matter is unripe. But, contrary to Defendant's argument, the Postal Service has not rescinded the decision to sell the property; rather, the Defendant, through the Zoning Ordinance, has attempted to force that determination onto the Postal Service. Thus far, Defendant has succeeded in doing so. It is for this very reason that the Postal Service now seeks the intervention of this Court.

Defendant also points to cases where regulations imposed incidental burdens on the Federal Government and argues that the Complaint fails to state a claim upon which relief can be granted because the effect of the Zoning Ordinance is "only" indirect. As explained below, those cases bear little resemblance to the situation here. The Zoning Ordinance is not a law of general applicability that happens to burden Government functions. Rather, as alleged in the Complaint, the Defendant enacted the Zoning Ordinance primarily to prevent the Postal Service from selling its property. The Constitution does not permit such usurpation of a federal function. It is black letter law that, under the Supremacy Clause, "the activities of the Federal Government are free from regulation by any state." *United States v. Alaska Pub. Utils. Comm'n*, 23 F.3d 257, 260–61 (9th Cir. 1994) (quoting *Mayo v. United States*, 319 U.S. 441, 445 (1943) and citing *M'Culloch v. Maryland*, 17 U.S. 316 (1819)). And, as explained below, those principles apply whether the unlawful regulation is attempted directly, or through a third party.

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                 1

Nor, as explained below, is this action time barred as Defendant contends, because the Federal Government is not bound by state statutes of limitations unless it has given its consent to be bound. For all of these reasons, the Postal Service respectfully requests that the Court deny the Defendant's Motion.

## BACKGROUND

The Postal Service has determined that, in light of its financial difficulties, it should sell its underutilized properties to ensure that it can continue to provide effective and affordable postal services to the public, in compliance with its universal service obligation set forth in 39 U.S.C. § 101. Compl. ¶¶ 12, 26, ECF No. 1. In 2012, the Postal Service concluded that the Berkeley Post Office at 2000 Allston Way, in Berkeley, California ("the Property") should be among those sold because its operations require only about seven percent of the space available in the building. *Id.* ¶¶ 13–14. Following extensive community engagement over several months, in October 2013, the Postal Service's broker began to market the Property. *Id.* ¶¶ 15–16. Reflecting regulatory requirements and the Postal Service's efforts to honor the community's concerns, the marketing materials for the Property discussed restrictions to preserve the Berkeley Main Post Office's historic features, and the Postal Service's interest in leasing back 3,500 square feet of the Property for its retail operations. *Id.*

In the same time period, the Defendant began efforts to prevent the sale of the Property. Those efforts included the following:

### A.    The Berkeley City Council Resolves to Oppose the Sale of the Property.

On March 5, 2013, the Berkeley City Council adopted Resolution 66,025-N.S., announcing that "the City of Berkeley formally opposes the sale of the Historic Berkeley Main Post Office building." *Id.* ¶ 17. The City Council also resolved "that the USPS suspend, for one year, efforts to sell the Berkeley Main Post Office building and work with the City of Berkeley with the goal of continuing the USPS's ownership of the building" and "request[ed] that USPS immediately impose a moratorium on all sales of Post Office Buildings nationwide." *Id.* The

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                  2

resolution further provided that "the City of Berkeley [would] reach out to other cities affected by the sale of postal facilities to develop a collective response." *Id.*[1]

### B. The Berkeley City Council Appeals the Decision to Sell the Property.

On April 30, 2013, the Berkeley City Council sent a letter to the Postal Service appealing the decision to relocate retail services stating, additionally, that "the Berkeley City Council continues to be united and passionate in its opposition to the sale of this property." *Id.* ¶ 18. The Postal Service considered this appeal as well as others, but ultimately upheld the determination that retail services should be relocated from the Property. The Postal Service announced that decision in a letter that explained that the Postal Service would try to accommodate the community's concerns, including by potentially pursuing a sale that would include a lease-back provision to allow retail services to continue at the Berkeley Main Post Office. *Id.* The Postal Service emphasized that "dire circumstances force[d] [it] to pursue every opportunity to reduce costs and generate revenue," and that "[t]he Postal Service must, in order to be self-sustaining, make decisions that ensure it provides adequate and affordable postal services in a manner that is as efficient and economical as possible." *Id.*

City Mayor Tom Bates then appealed the Postal Service's decision to sell the Property and relocate services to the Postal Regulatory Commission ("PRC"), the Postal Service's independent regulator. *Id.* ¶ 19. The Mayor argued that the Postal Service failed to observe required procedure in deciding to close the Berkeley Main Post Office and that the decision was not supported by substantial evidence. *Id.* The PRC dismissed the appeal, finding that the Postal Service's actions concerning the Berkeley Main Post Office were "insufficient to trigger an appeal at [that] time." *Id.* ¶ 20. The PRC held that the appeal would not be ripe until it was

---

[1] On June 20, 2015, the City of Berkeley reaffirmed its intention to dictate the activities of the Postal Service with respect to the Property in Resolution No. 67,128-N.S., entitled "To Preserve and Best Utilize the Downtown Berkeley Main Post Office Building." *See* Compl. ¶ 41 (discussing ECF 1-3). The Resolution reaffirms the Council's March 7, 2013 resolution "in opposition to the sale of the downtown Berkeley Post Office" and expresses plans to discuss "the future of the downtown Berkeley Post Office with the appropriate United States Postal Service officials," including, *inter alia*, what services should be offered at that location, and "[p]otential best uses of space inside the building that is not needed for Postal Services." *Id.*

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                                    3

known "when the Berkeley [Main Post Office] [would] close, and where and when the replacement facility [would] begin operations as a post office."  *Id.*

### C. The Berkeley City Council Passes the Zoning Ordinance to Prevent the Sale of the Property and Also Files Suit to Enjoin the Sale.

In the summer of 2013, the members of the Berkeley City Council began discussing a zoning overlay that would restrict the Property to civic and nonprofit uses as a means of preventing the sale of the Property.  *Id.* ¶ 27.  By letter dated July 8, 2013, City Councilmember Jesse Arreguín advised the Postal Service that the City Council was considering changes to the zoning in the area where the Property is located.  *Id.* ¶ 28.  Councilmember Arreguín concluded his letter:

> Given that USPS is in the process of considering the potential sale of the Berkeley Main Post Office Building, I wanted to bring this to your attention, since the proposal would change the allowable zoning for the property, and would affect what a buyer could do with the property if the building was sold.  I also want to take this opportunity to reiterate the Berkeley City Council's strong opposition to the sale of the Berkeley Main Post Office.

*See id.* (quoting ECF 1-2).

Other City officials' discussion of the proposed zoning change likewise reflected that the purpose of the ordinance would be to regulate—and prevent—the Postal Service's sale of the Property.  At a November 6, 2013 regular meeting of the Berkeley Planning Commission, Commissioner Harry Pollack "expressed his opinion that the overlay was not an appropriate tool for the preservation of the Post Office and urged the Council to buy the Post Office building."  *Id.* ¶ 29.  At a January 28, 2014 public meeting of the City Council, Councilmember Susan Wengraf stated, in support of the Ordinance, "I think you all know that I am very much in favor of saving the Post Office."  *Id.* ¶ 30.  Councilmember Max Anderson similarly commented on the effort to "defend . . . that building and the purposes for which it was originally designed," arguing that for the City Council "to not go ahead and pursue this overlay . . . would be disarming ourselves in the middle of a battle."  *Id.*  Indeed, Berkeley Mayor Bates expressed a similar view of the zoning overlay to a local online newspaper when he said:  "There is general agreement on the council that we would like to save the Post Office, and this is a good way to do

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                    4

it . . . The civic center overlay portion of the initiative . . . can be easily described as 'help save the post office.'" *Id.* ¶ 31.

On September 9, 2014, the Berkeley City Council passed Berkeley Municipal Code Chapter 23E.98, Civic Center District Overlay ("the Zoning Ordinance"), restricting nine parcels in downtown Berkeley, including the Property, to civic or nonprofit uses. *Id.* ¶ 32. The Zoning Ordinance eliminated virtually all commercially viable uses of the Property. *Id.* Prior to the passage of the Zoning Ordinance, allowable uses of those properties were the same as those in the surrounding downtown Berkeley area and included commercial and residential uses. *Id.* Under the Zoning Ordinance, however, the Property's only allowable uses include: libraries, judicial courts, museums, parks and playgrounds, public safety and emergency services, government agencies and institutions, public schools/educational facilities, non-profit cultural, arts, environmental, community service and historic organizations, live performance theatre, and a public market. *Id.*

The Berkeley City Council cherry-picked properties to be subject to the Zoning Ordinance's restrictions; within a given block, certain buildings are included, while others are not. *Id.* ¶ 33. The result is an irregular 16-sided shape covering two full city blocks and select portions of four additional blocks. *See id.*, Exh. 2 at 7 (showing the shape of the overlay). Of the nine parcels regulated by the Zoning Ordinance, the City of Berkeley (or other local government bodies such as the Berkeley Unified School District) owns seven, and the YMCA and the Postal Service own the remaining two. *Id.* ¶ 33. Additionally, the City permitted its lessees in City-owned parcels within the Civic Center District Overlay to conduct commercial activity inconsistent with the Zoning Ordinance. *Id.* Thus, the practical effects of the Zoning Ordinance have fallen only on the Berkeley Main Post Office property, while commercial activity under then-existing leases was allowed to continue in and around other parcels subject to the Zoning Ordinance. *Id.* ¶ 34.

On September 22, 2014, the Postal Service entered into an agreement for sale of the Property with developer Hudson McDonald LLC, which submitted a bid on the Property that was in the best interests of the Postal Service to accept. *Id.* ¶ 35. Under that agreement, the sale

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                                    5

was to close by December 22, 2014.  *Id.*  That developer, however—like other potential

commercial purchasers with whom the Postal Service communicated regarding the Property—

expressed concerns regarding the City's opposition to the sale, and, in particular, the potential

zoning overlay.  *Id.*

According to the Defendant's Motion, the Zoning Ordinance went into effect on October

30, 2014, thirty days after its second reading, which occurred on September 30, 2014.  Def.'s

Mot. at 3 n.5.[2]  The developer attempted to negotiate relief from the Zoning Ordinance with City

officials, but was unable to do so within the timeframe provided by the sale agreement.  Compl. ¶

37.

On November 5, 2014, the City filed a lawsuit against the Postal Service in the Northern

District of California, seeking to prevent the then-pending sale of the Property.  *See id.* ¶ 38

(discussing Compl. for Declaratory & Injunctive Relief, *City of Berkeley v. USPS*, Civ. No. 3:14-

cv-04916, ECF No. 1).[3]  After the developer terminated the sales agreement on December 3,

2014, the City filed an Amended Complaint seeking declaratory and injunctive relief "to prevent

and enjoin [the Postal Service] from implementing [its] decision . . . to relocate and sell the

Berkeley Main Post Office . . . until and unless USPS complies with its obligations under the

National Environmental Protection Act (NEPA) and National Historic Preservation Act

(NHPA)."  *See id.* ¶ 39 n.2 (discussing First Am. Compl. for Declaratory & Injunctive Relief,

Civ. No. 3:14-cv-04916 ¶ 1 (Dec. 30, 2014)).  After the Postal Service notified the Court that the

Postal Service had rescinded its July 18, 2013 Final Determination to relocate retail services

from the Property (by deciding, in September 2014, to retain retail services at that location), the

Court dismissed the action as moot, but required that the Postal Service provide the City forty-

two days advance notice of the closing of any future sale of the Property or any final

---

[2] The Complaint had listed September 30, 2014 as the date on which the Zoning
Ordinance took effect, Compl. ¶ 36, but the Defendant clarified that the Zoning Ordinance did
not go into effect until thirty days after its second reading.  *See* Def.'s Mot. at 3 n.5.

[3] The Court has related that case to the instant action.  *See* Order Relating Case, ECF No.
8.

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                                    6

determination to relocate retail post office services.  *See id.* (describing Order Dismissing Case as Moot, Civ. No. 3:14-cv-04916, 2015 WL 1737523 (Apr. 14, 2015) ("Order Dismissing Case as Moot")).

The Postal Service, however, has not relisted the Property for sale because the Zoning Ordinance has rendered the Property unattractive to commercial developers, and has depressed the market price of the Property to the point where sale is not economically reasonable to pursue. Compl. ¶ 40.  Thus, while the Postal Service has determined that a sale is necessary pursuant to its responsibilities under the Postal Reorganization Act to "maintain postal facilities . . . consistent with reasonable economies of postal operations," "to provide such offices, facilities and equipment as it determines are needed," and "to hold, maintain, sell, lease, or otherwise dispose of such property or any interest therein,"  39 U.S.C. §§ 403(b)(3), 404(a)(3), 401(5), the Zoning Ordinance has constrained the ability of  the Postal Service to carry out those responsibilities.  Compl. ¶ 40.

On August 22, 2016, the Postal Service initiated this action, seeking relief from the Defendant's unlawful regulation of the Postal Service's activities.

## ARGUMENT

The Postal Service seeks relief from this Court because the Defendant has used the Zoning Ordinance to target, and in effect prohibit, the sale of the Property.  In response, Defendant seeks dismissal of the Complaint, arguing that 1) this action is unripe because the Postal Service is not currently seeking to sell the Property; 2) this action is time barred under a state law; and 3) this action fails to state a claim upon which relief can be granted because the effect of the Zoning Ordinance on the Postal Service is "only" indirect.  All three arguments are without merit.  To begin with, this action is ripe because although the Postal Service's decision to sell the Property remains, the challenged Zoning Ordinance has essentially prevented the Postal Service's execution of that decision and its other responsibilities under federal law.  Nor does the California statute that Defendant cites present an obstacle to this action because, absent its consent, the Federal Government is not bound by state statutes of limitations.  Finally, the Defendant ignores the gravamen of the Complaint—the allegation that the Zoning Ordinance

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                                    7

was enacted primarily to prevent the sale of the Property, usurping a decision that Congress entrusted to the Postal Service—in erroneously contending that the Complaint fails to state a claim.  While the Defendant downplays the undisputed "indirect" effect of the Zoning Ordinance, the law makes no such distinction; under the case law addressing both Supremacy Clause claims and conflict preemption, the Postal Service's allegations are sufficient to state a claim for relief.  Defendant's motion therefore should be denied.

## I.    Defendant's Motion Should Be Denied Because This Action Is Ripe.

"The ripeness doctrine precludes federal courts from exercising their jurisdiction over an action that is filed before a real dispute exists between the parties."  *Hawaii Newspaper Agency v. Bronster*, 103 F.3d 742, 746 (9th Cir. 1996) (citing *Poe v. Ullman*, 367 U.S. 497, 507 (1961)).  "Ripeness has both constitutional and prudential components."  *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (citation omitted).  "The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing."  *Id.* (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir.2000) (en banc)).  "Whether framed as an issue of standing or ripeness, the inquiry is largely the same:  whether the issues presented are 'definite and concrete, not hypothetical or abstract.'"  *Id.* at 1060 (quoting *Thomas*, 220 F.3d at 1139 (internal quotation marks omitted)).  "To evaluate the prudential component of ripeness, [courts] weigh two considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).  Based on such considerations, this action is ripe.

### A.    The Zoning Ordinance Works a Definite and Concrete Injury to the Postal Service by Usurping and Attempting to Prohibit a Federal Function.

Defendant contends that there has been no injury to the Postal Service because "the predicate to this action's ripeness is a decision to sell the Property," and, according to the Defendant, the Postal Service has "repudiated its decision." Def.'s Mot. at 2, 5.  Defendant further suggests the Postal Service would sustain an injury only if the Zoning Ordinance were to prove "an insurmountable barrier to a sale" once the Postal Service otherwise reached an

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                                    8

agreement to sell the Property. *Id.* at 8. Defendant is mistaken in both respects. As an initial matter, the premise of Defendant's argument is false; the Postal Service has not repudiated its decision to sell the Property. Defendant's contrary understanding appears to be based on the Notice of the Status of the United States Postal Service's 2013 Final Determination filed in the prior related action. *See* Def.'s Mot. at 5. As explained in the Complaint, that Notice merely informed the Court that the Postal Service had rescinded its decision to *relocate retail services at this time*, *see* Compl. ¶ 39 n.2. Defendant asserts in a parenthetical, without explanation or citation, that the rescission of that determination "necessarily" included a rescission of the decision to sell the Property. Def.'s Mot. at 6. There is no support for Defendant's assertion. Indeed, that assertion is undermined by the fact that the Postal Service put the property on the market for sale with a provision for the possible lease back of space for a retail post office, *see* Compl. ¶ 16, as well as the Defendant's decision subsequent to the filing of that Notice to file an action seeking to enjoin the then-pending sale, *see id.* ¶ 38. The decision not to relocate retail services was not a decision not to sell.

Defendant's further contention that ripeness here turns on injury to an actual pending sale is also erroneous. *See* Def.'s Mot. at 8. In an action such as this—where the Federal Government seeks redress for a municipality's attempt to regulate a federal function—the injury suffered by the Government is "[the] direct interference with the exercise of the powers of the federal government." *United States v. City of Pittsburg*, 467 F. Supp. 1080, 1083 (N.D. Cal. 1979), *aff'd*, 661 F.2d 783 (9th Cir. 1981).[4] In *United States v. City of Pittsburg*, the Postal Service brought a Supremacy Clause challenge to a city's criminal trespass ordinance, under which no postal letter carrier could cross a lawn within the city's borders without obtaining the prior express consent of the owner. *See* 467 F. Supp. at 1083. The court in that case held that

---

[4] *Cf. United States v. City of Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985) (holding that the United States had standing to challenge a local tax that resulted in an "injury to its sovereign rights," because "the United States may bring suit to protect its sovereign interests notwithstanding the lack of any immediate pecuniary interest in the outcome of the litigation").

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                                    9

the action was ripe based on the city's "interference with the exercise of the powers of the federal government."  *Id.*[5]

The Supreme Court's analysis in *Maryland v. Louisiana*, 451 U.S. 725 (1981) is illustrative.  There, several states, joined by the United States, the Federal Energy Regulatory Commission ("FERC"), and several private companies, challenged a Louisiana "first use" tax on natural gas.  *See* 451 U.S. at 731, 734.  In addition to imposing a tax on private companies that piped natural gas into the state for processing, the Louisiana law specified how the cost of the tax was to be allocated (*i.e.* whether the cost was to be borne by private companies or passed to consumers).  *Id.* at 749–50.  In assessing whether that aspect of the state law violated the Supremacy Clause by encroaching on the FERC's authority to allocate costs between companies and consumers, the Supreme Court noted a Special Master's previous determination that it was not yet clear that there was actually a conflict between how the state law allocated costs, and how the FERC would determine the costs should be allocated.  *Id.* at 750–51.  The Special Master recommended postponing the adjudication of this issue because additional factual development may be helpful, and "it may be that 'in the end [the] FERC's orders can be adjusted so that the laws will mesh without conflict.'"  *Id.* at 751 (quoting Special Master).  The Supreme Court emphatically disagreed.  *Id.*  Because federal law vested the FERC with the authority to allocate costs, the issue was ripe for decision without further evidentiary hearings; "[e]ven if the FERC ultimately determined that such expenses should be passed on *in toto*," rendering the FERC's judgment consistent with the allocation selected by Louisiana, "this kind of decisionmaking is within the jurisdiction of the FERC . . . and [therefore] the Louisiana statute . . . is inconsistent with the federal scheme and must give way."  *Id.* at 751.  Granting judgment on the pleadings for the plaintiffs on this issue, the Supreme Court held that "the State may not trespass on the authority of the federal agency," *id.*, demonstrating that the injury to the Government in such a situation inheres in the attempt to displace the authority that Congress vested in the federal agency.

_____

[5] The Court of Appeals affirmed the district court's decision without revisiting the question of ripeness.  *See United States v. City of Pittsburg*, 661 F.2d 783 (9th Cir. 1981).

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                   10

As alleged in the Complaint, the challenged Zoning Ordinance here constitutes such an attempt, specifically to remove the decision of whether to sell the Property from the Postal Service, and instead allow the Defendant to dictate the decision. The Zoning Ordinance has rendered the Property unattractive to commercial developers by prohibiting any economically viable use of the Property, and has so depressed the market price of the Property as to render a sale financially untenable. *See* Compl. ¶ 40. Indeed, this Court previously recognized that the change wrought by the Zoning Ordinance "substantially [shrank] the possible universe of purchasers or alternative users for the building," rendering it "highly unlikely" that an agreement could be reached to sell the Property "in the foreseeable future." Order Dismissing Case as Moot at 4, 8. This intentional targeting of and interference with the Postal Service's decision to sell the Property has deterred the Postal Service from relisting the Property for sale, notwithstanding its determination that a sale remains necessary. That is a cognizable injury that makes the claims here ripe for determination.

Nor is that conclusion undermined by this Court's determination that the prior related action was moot. Defendant argues that "if that case is still moot, then this one is unripe," suggesting that the same reasoning that led the Court to dismiss the prior related case necessitates dismissal of the instant action. Def.'s Mot at 8. In particular, the Defendant argues that in the absence of an agreement to sell the Property, this action is unripe just as the prior action is moot. *See id.* That argument plainly ignores the differences in the claims at issue in these two cases.

Defendant brought the prior action under the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, alleging that the Postal Service had not taken the steps required by those statutes in connection with the then-pending sale of the Property. As this Court noted when dismissing the prior action as moot, "[a]ny injury [the City] could conceivably suffer in the future turns on several unknown contingencies" including "that the terms of [any] future sale and/or relocation, and the actions taken by USPS leading up to them, *actually violate* NEPA and the NHPA." Order Dismissing Case as Moot at 5 (emphasis added). In other words, any injury in connection

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                 11

with those statutes is conjectural, and depends wholly on, *inter alia*, the steps that would be taken by the Postal Service in connection with any future sale.  In this case, on the other hand, the Postal Service's injury is current and immediate, and continues so long as the Zoning Ordinance impairs the economic viability of the sale of the Property and interferes with the execution of the Postal Service's responsibilities under federal law in violation of the Supremacy Clause.  *See supra* 8–11.  Indeed, the gravamen of the Complaint is that the Zoning Ordinance limits the Postal Service in its attempts to properly dispose of the Property.  Thus this action is ripe for determination.

> **B.** **The Court Should Exercise its Jurisdiction Now Because the Issues Presented are Primarily Legal, and the Postal Service Continues to Suffer Harm While the Zoning Ordinance Remains in Effect.**

Prudential considerations also dictate that this action withstand dismissal on ripeness grounds.  In assessing prudential ripeness, this Court should weigh:  "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Wolfson*, 616 F.3d at 1060 (9th Cir. 2010) (quoting *Abbott Labs.*, 387 U.S. at 149).  Both considerations weigh in favor of the Court's exercise of its jurisdiction in this case.  As to the first prong of this test, "[a] claim is fit for decision if the issues raised are primarily legal, [and] do not require further factual development."  *Wolfson*, 616 F.3d at 1058 (quoiting *US West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999)).  This test does not require that all the facts related to a given case be fully developed; rather; factual contingencies "would only be relevant if waiting for them to play out would 'significantly advance [the court's] ability to deal with the legal issues presented []or aid [the court] in their resolution.'"  *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 904 (10th Cit. 2016) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 82 (1978)).

Actions under the Supremacy Clause, including preemption actions, often do not require further factual development because, as the Supreme Court explained in *Pacific Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, "[t]he question of preemption is predominantly legal."  461 U.S. 190, 201 (1983).  Although noting that "it would be useful" to have certain additional information about the state's interpretation of the provisions challenged

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                                          12

in that case, the Supreme Court ultimately held that "resolution of the preemption issue need not await that development."  *Id.*; *see also Supreme Court of New Mexico*, 839 F.3d at 904 (whether federal law preempted a state professional rule of conduct was a "matter[] of law that [could] be resolved without further factual development").  Indeed, in *Maryland v. Louisiana*, the Supreme Court rejected further evidentiary hearings proposed by the Special Master to determine whether the policy determinations of the FERC would, in the end, differ from those imposed by the challenged Louisiana law.  *See* 451 U.S. at 751.  In rejecting the need for the kind of further evidentiary development Defendant here suggests, the Supreme Court held that such an approach would be "as inappropriate as Louisiana's effort to pre-empt [the FERC's] decisions by a statute."  *Id.*

Under that same rationale, the issues before the Court are ripe for judicial determination. As to the Supremacy Clause claim, the Court would need to examine:  1) whether the sale of the Property is a federal function; 2) whether Congress has authorized the Defendant to regulate this function; and 3) whether the Zoning Ordinance constitutes an interference with that function. *See*, *e.g.*, *Boeing Co. v. Movassaghi*, 768 F.3d 832, 840 (9th Cir. 2014) (assessing whether a statute challenged under the Supremacy Clause amounted to interference with a federal function without Congressional authorization).  Only the third of these three elements contains a factual component, and there are no additional facts that need to "play out" to permit the Court's resolution of the Government's claim.  *Supreme Court of New Mexico*, 839 F.3d at 904.  So, too, with the preemption claim, which would require an examination of whether the Zoning Ordinance "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *See*, *e.g.*, *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012) (citation omitted).

This Court also should exercise its jurisdiction based on the second prong of the prudential ripeness inquiry, the hardship to the Plaintiff from withholding judicial review.  In a preemption action where a city or state is interfering with the execution of a federal function, delayed resolution risks extending the period during which Congress' objectives are frustrated. *See Pacific Gas and Elec. Co.*, 461 U.S. at 202 (reasoning that, if the petitioners were correct,

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                    13

then delayed resolution of the preemption claim "would frustrate one of the key purposes of the [federal legislation]" on which petitioners based their preemption claim). Here, the Zoning Ordinance impedes the accomplishment of the full purposes of federal law because it restricts the Postal Service from carrying out the responsibilities assigned to it by Congress in the Postal Reorganization Act. *See supra* Section I.A (describing further the injury to the Postal Service).

Additionally, in assessing the hardship to the Postal Service, it is appropriate to consider the broader effects that actions like the Zoning Ordinance can have on the Postal Service's ability to execute its responsibilities under federal law. *See N. Nat. Gas Co. v. State Corp. Comm'n of Kansas*, 372 U.S. 84, 92 (1963) (state's administrative rules "threatened to seriously impair the Federal Commission's authority to regulate [an] intricate relationship . . . with respect to which Congress ha[d] given the Federal [] Commission paramount and exclusive authority"); *Ogden Envtl. Servs. v. City of San Diego*, 687 F. Supp. 1436, 1446 (S.D. Cal. 1988) (citation omitted) ("if every locality were able to dodge responsibility for and participation in this program through artfully designed ordinances, the national goal . . . would surely be frustrated"); *see also, e.g.*, *AES Sparrows Point LNG, LLC v. Smith*, 470 F. Supp. 2d 586, 589 (D. Md. 2007) ("A local government may not exercise veto power over this nationwide process by local zoning legislation"). The Zoning Ordinance and its regulation of the Postal Service's disposition of the Property should be viewed in light of the large network of properties that the Postal Service must manage as part of its operations, *see* Compl. ¶ 7. Especially because the Postal Service has broad responsibilities, nationwide  "to establish and maintain postal facilities . . . consistent with reasonable economies of postal operations," and "to determine the need for post offices . . . and to provide such offices . . . as it determines are needed," 39 U.S.C. §§ 403(b)(3), 404(a)(3), the Defendant's usurpation of the Postal Service's ability to "sell, lease, or otherwise dispose of such property," *id.* § 401(5), works a hardship on the Postal Service and damages its ability to execute its universal service obligation.  The hardship in this situation is particularly acute as the sale with which the Zoning Ordinance has interfered is part of the Postal Service's efforts to reduce costs and generate revenue to address its dire financial circumstances. *See* Compl. ¶ 18.  As explained in the Complaint, such measures are necessary to ensure that the Postal Service

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                                    14

remains self-sustaining and provides adequate and affordable postal services in a manner that is as efficient and economical as possible.  *See id.*

*****

For all of these reasons, this action is ripe for judicial decision, and this Court should deny the Defendant's motion to dismiss on that basis.

## II.   California Government Code Section 65009 Presents No Bar to this Action.

This action clearly is not governed by the 90-day statute of limitations provided by California Government Code Section 65009.  *See* Def.'s Mot. at 8–11.  It is well established that, unless it has given its consent to be bound, "the United States is not bound by state statutes of limitations period[s] when asserting a federally created right."  *Novato Fire Prot. Dist. v. United States*, 181 F.3d 1135, 1141 (9th Cir. 1999) (citing *United States v. Summerlin*, 310 U.S. 414, 417–18 (1940)) (rejecting argument that California statute of limitations barred Government's Supremacy Clause claim); *Summerlin*, 310 U.S. at 416 ("[T]he United States is not bound by state statutes of limitations . . . in enforcing its rights."); *see also, e.g., California Ins. Guarantee Ass'n v. Burwell*, 170 F. Supp. 3d 1270, 1274 (C.D. Cal. 2016) (limitation period provided by California statute did not bind the United States Department of Health and Human Services or the Center for Medicare and Medicaid Services).  As one court explained, "the familiar rule" that state statutes of limitations do not bind the Government absent its consent "has its origins in the concept of sovereign immunity; just as the states cannot sue the federal government without its consent, the states cannot enact laws that purport to bind the federal government without its consent."  *Id.* (noting that recent cases have described this rule as a "corollary to the Supremacy Clause").

Here, the Postal Service has not consented to be bound by Section 65009, and Defendant does not allege that it has, *see* Def.'s Mot. at 8–11.  Accordingly, the limitations period provided therein has no application to the Postal Service's asserted constitutional claims.  Nor does a federal statute impose a limitations period on these claims.[6]  In the absence of an applicable

---

[6] Defendant identifies 28 U.S.C. § 1658(a) as a potentially applicable statute of limitations, but then explains why it does not apply here.  *See* Def.'s Mot. at 8–11.

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                 15

federal statute of limitations, as here, no statute of limitations applies.  *See United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1489 (9th Cir. 1993) (citing *Summerlin*, 310 U.S. at 416) ("In the absence of a federal statute expressly imposing or adopting one, the United States is not bound by any limitations period.").  Thus, contrary to Defendant's argument, this action is not time-barred.

### III.   The Complaint States a Claim Upon Which Relief Can Be Granted Because the Supremacy Clause Bars the Regulation of a Federal Function or Interference with a Federal Function, Whether that Regulation or Interference Occurs Directly or Through a Third Party.

Defendant erroneously grounds its arguments under Federal Rule of Civil Procedure 12(b)(6) on the fact that the Zoning Ordinance purports to regulate only the buyers of the Property and therefore, Defendant claims, "has only an indirect effect" on the Postal Service, Def.'s Mot. at 11.  "To avoid dismissal under Rule 12(b)(6), a complaint must plead 'enough facts to state a claim [for] relief that is plausible on its face.'" *Twitter, Inc. v. Holder*, --- F. Supp. 3d ---, 2016 WL 1729999, at *2 (N.D. Cal. May 2, 2016) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  "All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." *Id.* (citing *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011)).

Here, the Postal Service has pled that the Zoning Ordinance "was enacted to prevent and has had the effect of preventing" the Postal Service's execution of a federal function, namely, disposing of its property.  Compl. ¶ 43.  Indeed, the Defendant acknowledges that the Zoning Ordinance has at least an indirect effect on the Property.  Def.'s Mot. at 11.  Where a city so targets a federal function, it is of no moment that it interferes with that federal function through a third party; under the case law addressing both Supremacy Clause claims and conflict preemption, these allegations are sufficient to state a claim for relief.

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                              16

**A.** **The Complaint States a Claim for Violation of the Supremacy Clause.**

The Supremacy Clause of the Constitution prohibits state and local regulation of a federal instrumentality, mandating that "the Laws of the United States . . . shall be the supreme Law of the Land, . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "A corollary to this principle is that the activities of the Federal Government are free from regulation by any state," *Alaska Pub. Utils. Comm'n*, 23 F.3d at 260–61 (quoting *Mayo*, 319 U.S. at 445 and citing *M'Culloch*, 17 U.S. at 316), "unless Congress provides clear and unambiguous authorization for such regulation," *Boeing*, 768 F.3d at 840; *see also Johnson v. Maryland*, 254 U.S. 51, 57 (1920) (state cannot apply license requirement to postal employee driving mail truck); *City of Pittsburg*, 661 F.2d at 786 (trespass statute invalidated for interfere with a postal worker "performing duties pursuant to federal law").

Defendant acknowledges that "the Postal Service is not bound to observe [local] land use regulations," Def.'s Mot. at 12 (quoting *Middletown Twp. v. N/E Reg'l Office, US Postal Serv.*, 601 F. Supp. 125, 127 (D.N.J. 1985)), and concedes that the Zoning Ordinance has an effect on the Postal Service's use of the Property. Def.'s Mot. at 11. Defendant's further suggestion however, that where a local land use regulation is directed at third parties it cannot interfere with federal authority is mistaken. *See* Def.'s Mot. at 11, 16. The Supremacy Clause prevents a municipality from regulating federal functions, even if the municipality achieves its unlawful purposes indirectly, through regulation of a third party. In *U.S. Postal Serv. v. Town of Greenwich*, 901 F. Supp. 500 (D. Conn. 1995), a town in which a contractor was constructing a new postal facility on leased land, the town requested a permit fee and demanded that the contractor implement various design changes to address a town building official's objections. *Id.* at 502–03. The court held that the legal principle that "the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides clear and unambiguous authorization for such regulation" applied to the Postal Service's lessors and contractors, *id.* at 504 (citations omitted): "the Town cannot *directly or indirectly* regulate post office buildings owned by the Postal Service, even if on leased land, without specific

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                 17

1    authorization from Congress." *Id.* at 507 (emphasis added); *U.S. Postal Serv. v. City of*

2    *Hollywood*, 974 F. Supp. 1459, 1460, 1465 (S.D. Fla. 1997) (holding that a city's building code

3    could not be applied to a private landlord renovating a building leased as a postal facility).[7]

4         Thus, here, the Government has stated a claim of a Supremacy Clause violation because

5    the allegations in the Complaint, taken as true, establish that:  1) the sale of the Berkeley Main

6    Post Office is a federal function; 2) Congress has not authorized the City to regulate this

7    function; and 3) the Zoning Ordinance constitutes an attempt by the City, nonetheless, to regulate

8    this sale and, indeed, the City has effectively prevented the Postal Service from disposing of its

9    property.  *See, e.g., Boeing*, 768 F.3d at 840 (setting forth the standard for a claim under the

10   Supremacy Clause).  Defendant's Motion does not dispute that there is no Congressional

11   authorization for the Zoning Ordinance, and instead focuses on the first and third elements of this

12   test.  *See* Def.'s Mot. 12–16.

13        As to the first element, the Postal Service alleges that the sale and disposition of property

14   is a federal function vested in the Postal Service by Congress, listed alongside the authority to

15   establish post offices or postal roads in the Postal Reorganization Act.  *See* Compl. ¶¶ 9–11

16   (discussing 39 USC §§ 401(5), 403(b)(3), 404(a)(3)).[8]  Indeed, as explained in the Complaint,

17   that function arises from the Constitution itself, which provides that Congress may "establish

18   Post Offices and post Roads."  *See id.* ¶ 9 (quoting U.S. Const. art. I, § 8, cl. 7).  Congress

19   delegated that authority to the Postal Service in 39 U.S.C. § 101, which codifies the Postal

20   Service's universal service obligation:

21        The United States Postal Service shall be operated as a basic and fundamental
          service provided to the people by the Government of the United States, authorized

22

23        [7] *See also, e.g., Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956) (holding that a
     Department of Defense contractor was not subject to state licensing requirements); *Boeing*, 768
24   F.3d at 1–40 (invalidating a state regulation even when the regulation operated on a third party,
     rather than the Federal Government itself, in carrying out a federal function).

25

26        [8] Although Defendant argues that the Zoning Ordinance "does not interfere with the
     Postal Service's ability to establish post offices or post roads, provide postal services to the
27   community or satisfy its financial obligations to the Department of the Treasury," there is no
     basis to highlight certain federal functions enumerated in the Postal Reorganization Act, as
28   Defendant has done, while excluding others such as the sale of Postal Service property.

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                                    18

> by the Constitution, created by Act of Congress, and supported by the people. The
> Postal Service shall have as its basic function the obligation to provide postal
> services to bind the Nation together through the personal, educational, literary, and
> business correspondence of the people. It shall provide prompt, reliable, and
> efficient services to patrons in all areas and shall render postal services to all
> communities. The costs of establishing and maintaining the Postal Service shall not
> be apportioned to impair the overall value of such service to the people

39 U.S.C. § 101; *see also* Compl. ¶ 9 (citing 39 U.S.C. § 101).  The authority provided in

39 USC §§ 401(5), 403(b)(3), 404(a)(3), including the ability to "hold, maintain, sell,

lease, or otherwise dispose of [its] property or any interest therein," *id.* § 401(5), is

essential in enabling the Postal Service to fulfill that obligation.

As to the third element of the Postal Service's Supremacy Clause claim—the allegation

that the Zoning Ordinance constitutes a successful attempt by the Defendant to regulate a federal

function— the Complaint alleges facts establishing that the Zoning Ordinance "was enacted to

prevent and has had the effect of preventing the Postal Service's sale of the Berkeley Main Post

Office property," Compl. ¶ 43; *see id.* ¶¶ 27–41.  Defendant, however, seeks to skirt that

contention by mischaracterizing the Government's complaint as concerning "the right to secure a

commercial buyer for the sale of its properties at whatever price it has in mind."  Def.'s Mot. at

12.  Defendant dismisses the effect of the Ordinance as merely "incidental" impact, comparable

to that which any generally-applicable law might have.  *See id.* at 12–16.

The Zoning Ordinance, however, was *not* enacted as a general land use regulation, but,

instead, was targeted, specifically to prevent the sale of the Property.  *See* Compl. ¶¶ 27–41.

Then-contemporaneous statements of council members who enacted the law confirm that intent.

*See, e.g., id.* ¶ 30 (quoting Councilmember Susan Wengraf as stating, in support of the

ordinance, "I think you all know that I am very much in favor of saving the Post Office" ); *id.*

¶ 31 (quoting Mayor Tom Bates as stating that "There is general agreement on the council that

we would like to save the Post Office, and this is a good way to do it . . . The civic center overlay

portion of the initiative . . .can easily be described as 'help save our post office.'").  So

motivated, the council cherry-picked properties for inclusion and exclusion from the Zoning

Ordinance.  The resulting historic overlay is an irregular 16-sided shape covering two full city

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                    19

blocks and select portions of four additional blocks that belies any suggestion of a legitimate purpose of the Zoning Ordinance.  *Cf. Shaw v. Reno*, 509 U.S. 630, 642 (1993) (plaintiffs stated an equal protection claim where they had identified a voting district with a shape "so extremely irregular on its face that it rationally [could] be viewed only as" the product of unconstitutional gerrymandering); *id.* at 647 ("recogniz[ing] that dramatically irregular shapes may have sufficient probative force to call for an explanation").

For all of these reasons, the cases that Defendant cites where regulations only "incidentally affect[ed] the federal government" and did not "discriminate against the Federal Government or those with whom it deals" are inapposite here.  Def.'s Mot. at 13–15.  The Zoning Ordinance in this case—targeted specifically at prohibiting a federal function—bears no resemblance to the state regulations which, for example, increased the price or milk or alcohol for every consumer of those goods, or adjusted rates charged to the Government to those available on the market, generally. *See id.* (discussing cases).  None of those cases involved an effort by a municipality to usurp (and effectively prohibit) a function that Congress specifically reserved to a federal agency.  *See*, *e.g.*, *Penn Dairies v. Milk Control Comm'n of Pa.*, 318 U.S. 261 (1943); *North Dakota v. United* States, 495 U.S. 423 (1990); United *States v. State Corp. Comm'n of Commonwealth*, 345 F. Supp. 843 (E.D. Va. 1972).[9]

In sum, that the City is alleged to have selected an indirect instrument to regulate the Postal Service is of no moment; the Supremacy Clause precludes a municipality from targeting a

---

[9] For example, in *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp. 2d 892 (N.D. Cal. 2007), the applicable laws "regulate[d] equally all public utilities, making no distinction based on the government's involvement."  633 F. Supp. 2d at 904.  Indeed, the court in that case emphasized that states could not "meddl[e] with federal government activities indirectly by singling out for regulation those who deal with the government."  *Id.* at 903.  Yet that is just what the Defendant has done with the Zoning Ordinance in this case.  *See supra* 8–11.  As discussed above, the Defendant targeted the Zoning Ordinance to interfere with the sale of the Property by imposing restrictions on potential buyers that would make a sale "highly unlikely."  Order Dismissing Case as Moot at 8.  In light of that targeted effort, *In re Nat'l Sec. Agency Telecomms. Records Litig.*, like the other cases on which Defendant relies, does not support Defendant's position here.

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                    20

federal function by direct or indirect means, and therefore the Government sufficiently has pled a

Supremacy Clause violation.

### B.     The Complaint States a Claim for Preemption by Federal Law.

The Postal Service clearly has also stated a claim that the Postal Reorganization Act

preempts the Zoning Ordinance.  Under the Supremacy Clause, "state laws are preempted when

they conflict with federal law."  *Arizona v. United States*, 132 S. Ct. 2492, 2495 (2012).

"Conflict preemption" includes cases in which "the challenged state law 'stands as an obstacle to

the accomplishment and execution of the full purposes and objectives of Congress.'"  *Id.* at 2501

(quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

The Ninth Circuit has found conflict preemption where a state law or local ordinance

purported to regulate the Postal Service's activities undertaken pursuant to the Postal

Reorganization Act of 1970.  *See Flamingo Indus. Ltd. (USA) v. U.S. Postal Serv.*, 302 F.3d 985,

996–97 (9th Cir. 2002), *rev'd on other grounds*, 540 U.S. 736 (2004); *City of Pittsburg*, 661 F.2d

at 785.  In *Flamingo Industries*, the Court addressed 39 U.S.C. § 401(3), which empowers the

Postal Service to "determine the character [of,] and necessity [for,] its expenditures."  *See* 302

F.3d at 997.  In that case, the company from which the Postal Service previously had acquired its

mail sacks challenged the Postal Service's procurement decisions under a California statute

prohibiting, *inter alia*, "any unlawful, unfair or fraudulent business act or practice."  *Id.* at 996.

Finding that the federal statute preempted the state law, the Court held that "allowing the

requirements of [the California statute] to control the Postal Service's procurement decisions

would impinge upon the Service's right to control the character and necessity of its purchases

free from state constraint."  *Id.* at 997.

The Court in *Flamingo Industries* relied on a prior case of conflict preemption where the

City of Pittsburg, California, attempted to regulate the Postal Service's activities through a

criminal trespass state.  *See id.* (citing *City of Pittsburg*, 661 F.2d at 785–86).  "It [was]

undisputed that each government [had] acted in an area of its acknowledged power:  The City in

the area of local property rights and Congress in the area of the postal service."  661 F.2d at 785.

The Court of Appeals noted, however, that "[l]ocal law will be found to be preempted by federal

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                          21

law whenever the 'challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Perez v. Campbell*, 402 U.S. 637, 649 (1971) (quoting *Hines*, 312 U.S. at 67)). The Court recognized "the Congressional mandate to the Postal Service to provide efficient mail delivery service," *id.*, and found that "[t]he local ordinance frustrates postal efficiency." *Id.* at 785–86. On this basis, the Court concluded that the local ordinance was unconstitutional.

As with the Supremacy Clause cases discussed above, *see supra* 17–18, courts have applied these preemption principles, not just to situations in which an ordinance purported to regulate the Postal Service directly, but also to situations in which a regulation would operate against a private party engaged by the Postal Service. *See Town of Greenwich*, 901 F. Supp. at 507; *U.S. Postal Serv. v. City of Hollywood*, 974 F. Supp. 1459 (S.D. Fl. 1997). In *Town of Greenwich*, the court held that "[a]ny regulation of the post office project, whether against the property, the lessor, or the building contractors 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" 901 F. Supp. at 507 (quoting *Hines*, 312 U.S. at 67), and concluded "the Town cannot *directly or indirectly* regulate post office buildings owned by the Postal Service, even if on leased land, without specific authorization from Congress," *id.* (emphasis added).

Likewise, in *U.S. Postal Serv. v. City of Hollywood*, the court held that a city's building code could not be applied to a private landlord renovating a building leased as a postal facility. 974 F. Supp. at 1460, 1465. The court concluded that the city's process "directly intrude[d] upon the Postal Service's ability to construct the postal project at issue," *id.* at 1463. The court then concluded that, although the building code was being applied to the private landlord, it was preempted in that case because the effect fell on the Postal Service, which was immune from such regulations. Although it was the landlord's activity that the building code purported to regulate, the court reasoned:

> to impose the impediment of state and local building regulations would result in a direct and unauthorized intrusion upon the Postal Service's ability to select the location, design and manner of site acquisition for necessary postal facilities.

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                      22

1    *Id.* at 1465.[10]

2          Here, where market devaluation is a factor of the alleged interference, *Clean Air Markets*

3    *Group v. Pataki*, 338 F.3d 82 (2d Cir. 2003) is also instructive.  There, the federal law that

4    created a cap and trade system of emission allowances preempted a New York law that penalized

5    utilities unless their allowances were sold with restrictive covenants prohibiting the transfer of

6    those allowances to certain states.  *Id.* at 88–89.  "Although [the law] [did] not technically limit

7    the authority of New York utilities to transfer their allowances, it clearly interfere[d] with their

8    ability to effectuate such transfers . . . [b]ecause such a restrictive covenant indisputably

9    decreases the value of the allowances."  *Id.*

10         In this case, the Postal Service has alleged that the Zoning Ordinance targets the sale of

11   the Property and interferes with the Postal Service's ability to execute its responsibilities under

12   the Postal Reorganization Act and the Property Clause of the Constitution, U.S. Const. art. IV, §

13   3, cl. 2, which provides that "The Congress shall have Power to dispose of and make all needful

14   Rules and Regulations respecting the Territory or other Property belonging to the United States."

15   *See* Compl. ¶¶ 1, 27–41, 47.  The Complaint further alleges that the Zoning Ordinance's

16   targeting impedes the accomplishment and execution of the full purposes and objectives of that

17   federal law.  *See id.* ¶ 47.  As with the regulations at issue in *City of Hollywood*, *Town of*

18

19              [10] The court in *City of Hollywood* relied on a case presenting a situation close to that
20   currently facing the Postal Service:  in *Breeze v. Town of Bethlehem*, 151 Misc. 2d 230 (N.Y.
     Sup. Ct. 1991), the town denied a building permit to a private landowner seeking to build a post
21   office facility on privately owned land for the Postal Service to lease, because the proposed
     project was not a "permitted use" under existing zoning for the site.  *See* 974 F. Supp. at 1464.
22   The state court rejected the argument that the private landowner was not subject to federal
     immunity, and held:
23
               The Postal Reorganization Act in direct and unmistakable terms gives the Postal
24             Service discretion to either purchase or lease real property in furtherance of its
               mission . . . To impose the impediment of state and local zoning and land use
25             regulation upon the Postal Service's discretion . . . would result in a direct and
               unauthorized intrusion upon the Unites States Government's power to select the
26             location and manner of site acquisition for necessary postal facilities.

27   *Id.* (quoting *Breeze*, 151 Misc. 2d at 233).  As reflected above, the court in *City of Hollywood*
     paraphrased this reasoning in its own holding.
28

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                                    23

1    *Greenwich*, and *Clean Air Markets Group*, this intrusion is sufficient to state a claim for

2    preemption, irrespective of whether the effect on the Postal Service is direct or indirect.

3

4                                    **CONCLUSION**

5         For all of these reasons, the Postal Service respectfully requests that the Court deny the

6    Defendant's Motion.

7    Dated: December 1, 2016                    Respectfully submitted,

8

9    OF COUNSEL:                                BENJAMIN C. MIZER
                                                Principal Deputy Assistant Attorney General
10
     JANINE CASTORINA
11   Attorney                                   JOSEPH H. HUNT
     Appellate and Commercial Litigation        Branch Director
12   United States Postal Service
     475 L'Enfant Plaza, SW                     JACQUELINE COLEMAN SNEAD
13   Washington, DC, 20260                      Assistant Branch Director
14   Phone: (202) 268-3069
     Fax: (202) 268-2049
15   E-mail: Janine.Castorina@usps.gov

16                                               */s/ Julia Berman*
                                                JULIA A. BERMAN, Bar No. 241415
17                                              United States Department of Justice
                                                Civil Division, Federal Programs Branch
18                                              20 Massachusetts Avenue, N.W.
19                                              Washington, D.C. 20001
                                                Tel: (202) 616-8480
20                                              Fax: (202) 616-8470
                                                Email: julia.berman@usdoj.gov
21                                              *Counsel for Plaintiff*

22

23

24

25

26

27

28

*United States Postal Service v. City of Berkeley*, Case No. 16-cv-4815
Plaintiff's Opposition to
Defendant's Motion to Dismiss                                              24